WINTER, by SMITH, Curator, v. KANSAS CITY CABLE RAILWAY COMPANY, Appellant.

Division Two, February 12, 1901.*

1. **Judgment: RELEASE ON MARGIN OF RECORD: RELEASE.** The acknowledgment of satisfaction of a judgment on the margin of the record where recorded, even though made under the seal or scroll of the judgment creditor, is not a contract, nor does the seal conclusively

NOTE.—Decided June 30, 1900. Motion to transfer to Court in Banc, filed; denied February 12, 1901. Received by reporter April 1, 1901.

import a consideration for the discharge of the debt. Such release is nothing more than an acknowledgment of payment. It is competent evidence tending to prove payment, but not conclusive, and entitled to no more force than any other receipt. If made by a curator in behalf of his ward, in obedience to the order of a probate court, it will be presumed that the court intended the satisfaction provided by statute, and nothing more.

2. ————: ————: ————: CONSIDERATION: EQUITY: STATUTE. Equity always requires an actual consideration for the release of a judgment or other valuable right, and permits the want of it to be shown, notwithstanding the release may be under seal or the private scroll of the creditor. Besides, section 2090, Revised Statutes 1889, permits an inquiry into the consideration of "a specialty or other written contracts," etc.

*Held,* by SMITH, J., in separate opinion, that the satisfaction of a release of a judgment, made under seal, imports a consideration, and no examination into the actual consideration should be made.

3. **Payment:** PART PAYMENT: DISCHARGE. The payment of a part of a liquidated debt will not discharge the whole, even if made for that purpose.

SMITH, J., while not disputing this rule of law, holds that it is not applicable where the creditor acknowledged satisfaction under seal.

4. ————: ————: TENDER BACK. One who attempts to rescind a settlement of a judgment made by him on the ground that the release thereof was obtained by misrepresentation and mistake, is not compelled to tender back the amount he received at the time his release was obtained, before he can claim the difference between the amount then paid him and the whole amount due, although that payment may have been at the time intended for a settlement of the entire judgment.

Transferred from Kansas City Court of Appeals.

AFFIRMED.

*Frank Hagerman* and *Karnes, Holmes & Krauthoff* for appellant.

(1)   The consideration for the release was not, on the conceded facts, open to question in this case but was conclusively presumed.   (a) This is true, first, because the release was under seal.   Undoubtedly the general rule is that a contract for the release of any obligation in consideration of the payment of a portion of what is owing is *nudum pactum* and unenforcible either at law or in equity; the obligation is unaffected by said contract except to the extent of the payment, which, instead of extinguishing it, only reduces it by the amount thereof, it being applied like any other credit on the debt.   This was the settled rule at common law, but to this general rule there was at common law the well-recognized exception that, where the contract, instead of being for a release, was one of release and under seal, it was deemed executed instead of executory, and irrevocable, the seal conclusively importing consideration, so that no court at law or in equity would inquire into the question of consideration. Braden v. Ward, 42 N. J. L. 518; Faughman v. Elizabeth, 33 At. Rep. 212; 2 Freeman on Judg. (4 Ed.), sec. 463; 2 Black on Judg., sec. 989.   (b) The surrender of a written obligation as paid in consideration of the payment of a portion of the amount due thereon is an executed release thereof and is irrevocable.   It has often been held that a formal release under seal is not the only way in which the holder of an obligation can bind himself, in consideration of the payment as a part due thereon, by a release of the balance thereof.   In all such agreements the great thing is, first, to use some form that is equivalent to the formal solemnity of sealing a release at common law, so that the courts can see that the transaction was done with due thought and deliberation, and next to complete the transaction so that the obligee can say that the debt was discharged, rather than that there was an agreement to discharge it.   Now, when the debt is evidenced by writing in any

Vol 160 mo—11

from, the surrender of the same, cancelled and satisfied is the most complete and perfect proof of the deliberate purpose on the part of the obligee to surrender the same. And, besides, in such a case, the discharge of the obligation is absolutely performed and executed. Ellsworth v. Fogg, 35 Vt. 355; Silvers v. Reynolds (N. J.), 2 Harr. 275. (c) The settlement was in pursuance of an order of the probate court and, therefore, no consideration was essential to support it. The statutes authorize curators to compromise and settle all demands due to their wards upon such terms as the probate court may direct. R. S. 1889, sec. 5298. (d) The satisfaction was entered of record in the mode prescribed by the statutes of the State, and forever discharged and released the judgment. And this without regard to the question of any actual consideration. R. S. 1889, secs. 6027, 6028, 6030, 6031, 6032. (2) This action can not be maintained for the additional reason that the $4,500 paid by defendant for the settlement and release is still retained by plaintiff and has never been refunded or tendered back to the defendant. It is too well settled for extended discussion that a court of equity will not entertain a bill to rescind a contract under which a valuable consideration has passed to the plaintiff from the defendant unless that consideration is refunded or tendered back before the proceeding to rescind is commenced. A different rule has sometimes been held to prevail in a law action, but only there under special circumstances, where the contract to be rescinded had been set up by way of defense. But the rule in equity cases is uniform. Before the plaintiff can have equity he must do equity. He can not be permitted by the chancellor to hold on to the avails of a contract and at the same time invoke the aid of a court of equity to set it aside. Och v. Railroad, 130 Mo. 27; Alexander v. Railroad, 54 Mo. App. 66; 2 Beach, Mod. Eq. Jur., sec. 552.

*Thompson & Wilcox, B. J. Woodson* and *Thos. J. Porter* for respondent.

(1) If there was no consideration for the acceptance of $4,500 in satisfaction of the judgment for about $6,800, the plaintiff is entitled to recover the difference, notwithstanding there may have been no mistake or misrepresentations.   Riley v. Kershaw, 52 Mo. 224; Deutman v. Kilpatrick, 46 Mo. App. 629; Peterson v. Wheeler, 45 Mo. 369; 1 Sutherland on Damages, pp. 426, 429.   In this case the demand was liquidated and undisputed.   Heintz v. Pratt, 54 Ill. App. 616; Morrell v. Baggart, 57 Ill. App. 530; Ryan v. Ward, 48 N. Y. 206; Luddington v. Bell, 77 N. Y. 143; Mack v. Schneider, 51 Mo. App. 101; Willis v. Cammell, 67 Mo. 730; Kley v. Healy, 127 N. Y. 593; Gould v. Bank, 86 N. Y. 81; Pierce v. Wood, 3 Fost. (N. H.) 519.   (2) The contention of appellant that the entry of satisfaction of the judgment being under seal is conclusive as a technical release under seal, is without merit. The language is, "do hereby acknowledge satisfaction of this judgment."   The effect of this language as a receipt is not altered by the seal, and the seal may be treated as mere surplusage.   2 Parsons on Contracts (6 Ed.), p. 721; Pruett v. Wainwright, 4 Gilman 414; White v. Cox, 29 Conn. 570.

BURGESS, J.—The record in this case was transferred to the Supreme Court by the Kansas City Court of Appeals on a former occasion, but not in accordance with section 6, article 6, of the State Constitution, and was for that reason retransferred to that court.

After the return of the record to the Court of Appeals, it was corrected by nunc pro tunc entry, and the case certified and transferred to this court upon the ground that one of the

judges of that court deems the opinion filed therein contrary to previous decisions by the Supreme Court.

The opinion of the Kansas City Court of Appeals was written by Judge GILL and concurred in by Judge ELLISON. Judge SMITH wrote a dissenting opinion. Both opinions are set out in this report and the opinion of Judges GILL and ELLISON is approved as properly declaring the law.

The judgment is affirmed.    *Gantt, P. J.,* and *Sherwood, J.,* concur.

MINORITY OPINION OF THE COURT OF APPEALS.

SMITH, J.—This is a suit in equity. For a proper understanding of the questions presented for decision, no better general statement of the case can be made than is to be found in the allegations of the petition which are as follows:

"Plaintiff says that Thomas R. Smith is the duly appointed and legally qualified curator of the estate of said Willie Winter, a minor under the age of fourteen years. Said Smith was appointed curator of said estate January 29, 1890, by the probate court of Buchanan county, in which county said minor then resided. Defendant is a corporation duly incorporated. That the estate of said minor then consisted of a judgment of the circuit court in and for Jackson county, Missouri, sitting at Kansas City, for the sum of $5,000 against said defendant, rendered on due service and dated April 22, 1886, in favor of said Willie Winter, by his next friend, D. R. Stevens. That on the second day of January, A. D. 1890, said judgment was affirmed by the Supreme Court of the State of Missouri, and no other proceedings to reverse or modify, or in any way affect, the validity of said judgment have been commenced or prosecuted. The said Smith had no connection with, nor personal knowledge of, the litigation to procure said

judgment or of the appeal to the Supreme Court to reverse the same, as said proceedings on behalf of said minor were conducted wholly by said next friend.

"On or about the seventeenth day of March, A. D. 1892, at St. Joseph, Missouri, said Thomas R. Smith was approached by defendant's agent whom said Smith at the time supposed and believed to be the attorney for said Willie Winter. That he was informed by said agent that said judgment was in litigation, of a tedious and complicated nature, and that defendant was willing to pay the sum of $4,500 in settlement of said judgment. Relying upon the representations so made as aforesaid, said Smith the same day made application at the February term, A. D. 1892, to the probate court of Buchanan county, for and procured an order authorizing said curator to accept said sum in satisfaction of said judgment. And on the next day, March 18, 1892, at Kansas City, Missouri, said Smith accepted from defendant said sum, and entered on the margin of the record of said judgment satisfaction in full thereof as curator of said estate. Said judgment, when so satisfied, principal and interest, amounted to the sum of six thousand, seven hundred and seventy dollars, exclusive of costs. Thereafter, at the same term of said court, on due notice to defendant, plaintiff made application to have said order of said probate court authorizing said settlement set aside, which order said court made during said term in the following words and figures, to-wit:

" 'In the probate court within and for said county. At the February term, 1892, on this seventh day of May, 1892, during the session of said court, among other things had and done, was the following, to-wit:

" 'In the matter of the estate of Willie Winter, minor. Now on this day the motion of Thomas R. Smith, public administrator of Buchanan county, Missouri, in charge of the

estate of said minor, to set aside an order of this court heretofore made, ordering and directing a compromise of a judgment against the Kansas City Railway Company, coming on to be heard, and it being shown to the court that due notice of the hearing of said notice has been served on said company, the same is submitted to the court on the evidence offered, and it appearing to the court that the order of this court heretofore made at this term on the seventeenth day of March, 1892, directing the public administrator in charge of said estate to accept $4,500 in full settlement of a judgment against the Kansas City Cable Railway Company, was made on a mistake of facts as to the amount due on said judgment and as to litigation in relation thereto then pending, and in reliance by said administrator upon the representations of said railway company, which representations were not true, and it now appearing that said judgment was final, that the same with interest amounted to about $6,800, instead of $5,000 as represented, and that said railway company and its securities, who were and are liable therefor, are solvent, and it further appearing that pursuant to said order of this court, said administrator accepted said sum of $4,500 of said company and entered satisfaction thereof in good faith by mistake as aforesaid, it is now ordered that said order directing a compromise of said judgment be and the same is now hereby set aside; to the end that the same shall not prevent other and further proceedings for the collection of the balance remaining due and unpaid on said judgment. And that said administrator be and he is now here ordered to enter a credit on said judgment for said sum of $4,500 as of the date of receipt thereof, instead of a satisfaction in full of said judgment.'

"Plaintiff says that said settlement of said judgment was made on a mistake as to the facts, relying on the representations of defendant as aforesaid and without any consideration

whatever. Said judgment is unpaid and, except as herein stated, in full force and effect.

"Wherefore plaintiff prays that said settlement of said judgment, and the aforesaid satisfaction of the same of record, may be cancelled, declared null and of no effect; that said $4,500 may be applied on said judgment as part payment; and that judgment be rendered against defendant and in favor of plaintiff for the balance due on said judgment, to-wit, the sum of twenty-five hundred, eighty-three and 30-100 dollars and interest from the date of the filing of this petition."

The answer was a general denial.

The decree in the court below was for the plaintiff and defendant has appealed.

I. The plaintiff, to maintain the issue in his behalf, was permitted, against the objections of defendant, to prove certain declarations of Vinton Pike, on the assurance given by the defendant that he would later on connect Pike with defendant in the capacity of attorney or agent. The objectionable declarations of Pike, just referred to, were those made by him to the curator and Mr. Carolus, and which the testimony of the two latter tended to prove.

The curator testified that Pike told him that he believed the best thing to do was to accept the $4,500 offer of settlement made by the defendant and to procure an order of the probate court authorizing the same; that there might be trouble in getting the $5,000; that defendant would not settle it, perhaps, without being forced, and that litigation would eat up the amount. These and other similar declarations made by Pike to the curator respecting the signing of the paper, requesting that the probate court, by an order, authorize a settlement of the judgment, and the subsequent occurrences connected with the curatorship, were testified to by the curator.

Carolus testified that Pike told him that plaintiff resided

in Buchanan county and had a judgment against defendant
for $5,000.   He said defendant had no objection to paying
the money, but wanted to pay it to a proper guardian; that
there were proceedings to have a guardian appointed in Kansas
City, etc.; that when Pike received notice of the motion to set
aside the appointment as curator, that he (Pike) told him
(witness) to resist the motion when it came up; that he (wit-
ness) asked Pike to assist him, but the latter refused, saying
the defendant did not want to be known in the matter; that
defendant was tired of certain lawyers bringing suits against
them, and wanted to give them as much trouble as they could
and to wear them out; that Pike sent for witness and told
him that there was a proposition made by defendant to com-
promise the judgment which had been affirmed by the Supreme
Court, but that the defendant would litigate it considerably;
that there had been an execution and there would be a great
deal of litigation; that he thought it would be advantageous
to plaintiff to compromise the matter, and for him to see the
curator and talk over the matter with the probate judge.   He
further told him (witness) that the litigation would amount to
a great deal more than the difference between the amount of the
offer and that of the judgment; that he informed the witness
in confidence that defendant was not as solvent as Thompson,
the lawyer who obtained the judgment, thought it was; the
possibilities being that the judgment would not be made at all;
that in view of all this he thought it advisable to compromise
the judgment.   He further testified that at the time Pike
requested him to hunt up the plaintiff that he (Pike) told him
that plaintiff's stepfather was a drunkard living in Kansas
City, and that proceedings had been set on foot down there to
have a guardian appointed, and that plaintiff's estate would be
so manipulated that the stepfather would get hold of it, and
also that the attorneys who had obtained the judgment were

trying to rob the plaintiff's estate by getting one-half of such judgment; that the plaintiff's interest required the appointment of a guardian so as to compel the attorneys to come and sue for their fees, where they could only obtain a reasonable allowance for their fees; and that Pike told witness that he represented the defendant from the beginning.   These, with other declarations of Pike, were testified to by the witness.

It is proper here to state that Pike, in his testimony, specifically denied that he made either or any of the declarations to which the curator and Carolus testified.

In vain have I searched the record for the assured evidence that was to establish the existence of the relation of attorney or agent between Pike and defendant.   The uncontradicted testimony of Pike and Lucas, the latter the general attorney for the defendant, was to the effect that the former was not employed by defendant to act for it to procure the appointment of the Buchanan county curator, nor to effect a settlement of the judgment.   Whatever inferences there might have been drawn from the circumstances proved by the testimony of the curator and Carolus are rebutted by the negative testimony of Pike and Lucas.

It therefore follows that the testimony of the curator and Carolus as to the declarations of Pike should not have been admitted, or if admitted on the plaintiff's assurance, the same should have been subsequently stricken out when it appeared that the plaintiff was unable to make good his assurance.

II.   The plaintiff assails the validity of the satisfaction of the judgment on three distinct grounds, namely: *first,* that it was procured by fraud; *second,* that it was the result of mistake; and, *third,* that it was wholly without a supporting consideration.   If either of these grounds find substantial support in the testimony contained in the record, then the decree must stand; otherwise not.

If we exclude from consideration, as we must, the declarations of Pike, already mentioned, it then remains only to consider whether the representations, contained in the application for leave to settle the judgment which was prepared by the defendant and signed by the curator, and presented by him to the probate court, were false and fraudulent, and if so, whether the satisfaction of the judgment was induced thereby. It appears from the testimony that in the latter part of 1889, or early part of 1890, defendant's said attorney, Lucas, mentioned to Pike the fact that plaintiff had a judgment against defendant, and that as he resided, as he was informed, in Buchanan county, he ought to have a curator appointed there to take charge of his estate; and that acting upon this suggestion Pike requested Carolus to look into the matter, which the latter accordingly did, and the result of which was that Smith was appointed curator of plaintiff's estate by the probate court of Buchanan county.

It must be inferred from the circumstances disclosed by the testimony that Pike was influenced in his action by no feelings other than those of kindness for the plaintiff and a desire to open the way for the ultimate professional employment of his young lawyer friend in the management of the plaintiff's estate by the curator to be appointed. The curator, after his appointment, having been apprised of Pike's connection with his appointment, constantly sought his advice in relation to the management of the estate of his ward, so that, without any special employment to that effect, he (Pike) became the recognized attorney for the curator in every matter which concerned the plaintiff's estate. The curator understood that Pike was in the employ of the estate, for he had testified that he expected to pay him for his services.

It appears that the plaintiff, by his next friend Stevens, brought his suit and recovered judgment against defendant;

that after the affirmance of the judgment an execution was issued thereon, and that defendant filed a motion in said court to quash the same, on the ground that the plaintiff had a lawfully appointed curator who alone was entitled to sue out the execution on the judgment. This motion was overruled and from the order overruling the same defendant appealed to the Supreme Court. It appears further that, on or about the day of the appointment of the said Smith as curator for plaintiff, another curator for plaintiff was appointed by the probate court of Jackson county. It also appears that still another curator was appointed for plaintiff by a Kansas court. These various representatives of the plaintiff claimed the right to collect the judgment.

About this time the defendant brought a suit in equity in which the next friend, the two Missouri curators, the attorneys of the next friend, the plaintiff herein and the sheriff, were made parties defendant. The object of the suit was to require the defendants therein to appear and litigate their respective rights to the judgment so that upon the determination thereof the defendant herein could discharge the same, and for an injunction, etc. The plaintiff's Buchanan county curator turned over the matter, so far as affected him in his fiduciary capacity, to Pike, who caused an answer to be filed wherein was set up his (the curator's) claim to the judgment.

It further appears that Thompson, the attorney for plaintiff's next friend, already referred to, filed a motion in the probate court of Buchanan county for the removal of the curator appointed by that court which was successfully resisted by Pike for the curator. Later on, Thompson presented a claim for allowance to the Buchanan probate court against the plaintiff's estate which was resisted by Pike for the curator. This claim was subsequently withdrawn by Thompson. Two years or more after the appointment of the Buchanan curator, and

while the interpleader suit was yet undisposed of and the appeal on the motion to quash the execution was pending in the Supreme Court, Lucas, the attorney of defendant, made an offer of $4,000 to Pike in settlement of the judgment. This offer, it appears, Pike rejected, but stated that if he would make a proposition in writing offering $4,500 that he (Pike) would submit it to the curator. Thereupon Lucas drew the application for leave to settle on payment of the last-named sum, which was mailed to Pike, who caused the same to be submitted to the curator. The application was favorably considered by the curator, who signed and presented it to the probate court. It appears that Pike appeared before the probate court, and in connection with the curator, favored the making of the order authorizing the acceptance of the defendant's offer.

It appears further, from the testimony of the curator, that he was governed in his action wholly by the counsel and advice of Pike, and that Pike did his thinking for him and that in the management of the estate of his ward he conformed in every particular to the views of Pike. During the two years in which Pike had been connected with the curator as his attorney and advisor, he had become fully acquainted with every phase of the controversy between plaintiff and defendant.

It is insisted that that part of the curator's application to the probate court which represented "that the sole estate of said minor consists of a judgment for $5,000, rendered in favor of said minor in the circuit court of Jackson county, Missouri, on the twenty-second of April, 1886, against the Kansas City Cable Railway Company; that the said judgment is and has been in litigation, and litigation concerning the same is now pending both in the said circuit court and the Supreme Court of said State and it is entirely uncertain when the said litigation will terminate, it having been begun in the year 1885 and there being two suits pending

now instead of one as then, and three claimants for the judgment now," was false and misleading as to the amount then due on the judgment. Since the date and amount of the judgment were truly represented, it may be fairly presumed that both Pike, the curator's *alter ego,* and the probate judge, knew the judgment under the statute bore interest at the rate of six per cent per annum from the date when it was given, so that it will not do to say that the representation in this regard was false, or that the application suppressed any material fact in respect to the judgment, or that the curator or the probate judge were unadvised thereby as to the amount of the judgment. Nor do we think that the representation as to the existing litigation was false. It is not disputed that the interpleader proceeding, and the motion to quash the execution previously referred to, were then pending and undisposed of. Certainly, if these actions were to be prosecuted, it was quite uncertain when or how they would terminate. It may be conceded that whatever way they terminated, the amount of the judgment would not be reduced, but this concession in no way impugns the correctness of the representation last alluded to. While the amount of the judgment was an important factor to be considered in determining whether or not the defendant's offer of settlement should be accepted, it was not the only one.

The plaintiff was a fatherless infant under fourteen years of age, who had no estate other than the judgment out of which he could be supported and educated. Seven years had come and gone since plaintiff, by his next friend, had invoked the assistance of the court in enforcing payment of his claim. The assertion of conflicting titles to the judgment had given rise to the two collateral actions to which the application referred made it quite likely that payment would be still further deferred. The representation then, as to the litigation, was not

only true, but was a proper matter to be considered in connection with the defendant's offer.

I am unable to discover that the application of the curator falsely represented any fact or that the curator and the probate court were not fully advised of every fact material to a full and fair consideration of the defendant's offer of settlement. There is much irreconcilable conflict in the testimony of the witnesses which it is unnecessary for us to specially notice. It is sufficient to say that a very thorough examination of all the testimony has not led us to the conclusion that the settlement was induced by the misrepresentation of any material fact by defendant, or that under the circumstances it was imprudent or ill-advised.

III.    It is true that it is a well-settled rule of equity that where a contract has been materially induced by an innocent but substantial misrepresentation of one of the parties, the other contracting party may avoid or rescind it.    [Sachliben v. Hemtzel, 117 Mo. 520.]    The testimony presented by the record does not disclose that the settlement was induced by any misrepresentation whatever and therefore the rule just quoted is without application to the present case.    I do not think the testimony adduced sufficient to authorize a court of equity to disturb the settlement in question on the ground of mistake.

IV.    The settlement made by the curator with the defendant in pursuance of the authority conferred by the order of the probate court was evidenced by an entry on the margin of the judgment as follows:

"I, Thomas R. Smith, public administrator and ex-officio public curator of Buchanan county, Missouri, and as such in charge of the estate of William Winter, the plaintiff in this judgment, in pursuance of the authority vested in me by law, and by virtue of an order of the probate court of said county, do hereby acknowledge full satisfaction of this judgment and costs.

"Witness my hand and seal this eighteenth day of March, A. D. 1892.

                    "Thos. R. Smith, Curator.    (Seal.)
"Attest:   H. H. Noland, Clerk, by W. B. Winn, D. C."

The defendant contends that the said marginal entry is a release of the judgment, but this the plaintiff denies and insists that it is no more than a receipt, but if the former it is wholly without consideration.

A release has been defined to be the act or writing by which some claim or interest is surrendered to another; the giving up or abandoning a claim or right to the person against whom the claim exists or the right is to be exercised or enforced.   [20 Am. and Eng. Ency. of Law, 740; Shep. Touch. 320; And. Law Dic. 871; R. & J. Law Dic., 1090; Taylor's Law Dic., 585.]   No set form of words is necessary to constitute a release—such words should be used as will express the intention; and such intention will be recognized in law and equity.   [20 Am. and Eng. Ency. Law, supra, and cases cited in note 5.]

It has been expressly declared by one statute that a marginal acknowledgment of satisfaction shall have the effect of a release.   [Revised Statutes 1889, secs. 6028, 6030, 6032.] I think there can be no doubt that the said marginal acknowledgment is a "release" in every sense that term implies.   A release may be under seal or it may not.   If of the former kind it is good without further proof of consideration than the seal imports.   [20 Am. and Eng. Ency. Law, 741.]

In Leake on Law of Contracts (3 Ed.), 794, it is said: "A release under seal being subject to the rules and incidents of a contract under seal does not require a consideration to support it either at law or in equity."   The learned author, on page 124 of the same work, further says that:   "Contracts made by deed under seal do not require a consideration to give

validity to the promise in the same sense as simple contracts by agreement. . . . With contracts under seal a deliberate intention to make a binding promise is presumed from the formalities required in the execution of the deed.   Hence, a voluntary promise, that is, one that is gratuitous or without consideration, may be binding in the form of a covenant by a deed under seal, though such promise can not be made binding in the form of a simple contract.   Equity follows the law in this respect, and allows a voluntary covenant full effect.   But the courts in administering equity, *though they can not set aside or restrict the legal operation of a contract merely on the ground that it is voluntary*, yet refuse to apply the auxiliary remedies of specific performance, injunction or other purely equitable remedies."   In Storm v. United States, 94 U. S. loc. cit. 84, it was said: "The seal imparts a consideration or renders proof of consideration unnecessary, because the instrument binds the parties by force of the natural presumption that an instrument executed with so much deliberation is founded upon some sufficient cause."   [Parker v. Parmele, 20 John. 134; 1 Smith's Lead. Cas. (7 Am. Ed.), 698; 1 Chitty on Con. (11 Am. Ed.), 20; Page v. Parker, 8 Gray, 213; Wing v. Chase, 35 Me. 265; 2 Bl. Com. 446; Followes v. Taylor, 7 Term R. 473.]

And it has been declared by us that the rule which permits the consideration clause of a sealed instrument to be explained by parol does not permit the operative effect of a deed to be destroyed by showing there was no consideration whatever.   [Hickman v. Hickman, 55 Mo. App. 311; Jackson v. Railroad, 50 Mo. App. 636.]   And it was declared in Bobb v. Bobb, 89 Mo. 411, that the want of consideration can not be shown against the recitation in the deed for the purpose of defeating the operative words of the instrument.

The plaintiff, as opposing the trend of the authorities just

referred to, calls our attention to section 383, Pomeroy's Equity Jurisprudence, where it is said by that author: "Equity has applied its principles of looking at the intent rather than at the form, in some instance, by treating the presence of a seal as a matter of no consequence, as producing no effect upon rights and duties of parties; in other instances, by disregarding its absence where absence would be fatal at law. Although the common law, in theory, requires a valuable consideration in order to render any agreement valid and binding, yet it declares that a seal was conclusive evidence of such a consideration, and under no circumstances would it permit this arbitrary effect to be removed by the evidence showing, no matter how clearly, the absence of any consideration. Equity, disregarding such form and looking at the reality, always requires an actual consideration, and permits the want of it to be shown, notwithstanding the seal, and applies this doctrine to covenants, settlements, and executory agreements of every description." By reference to the cases cited in the footnotes of the section, the meaning intended to be conveyed by the language of the section will become clear. It will be seen that the doctrine of the text is limited in its application to those cases where a party seeks specific performance of a voluntary agreement or voluntary covenant under seal. A court of equity will not execute a voluntary contract, and the principle of these courts to withhold their assistance from a volunteer applies equally whether he seeks to have the benefit of a contract, a covenant or a settlement. Want of consideration is a sufficient reason for refusing the assistance of a court of equity. If in a suit for specific performance of a contract it is developed that such contract is voluntary or, which is the same thing, is supported by no consideration other than that imparted by the seal thereto, the court will refuse to lend the assistance invoked. In no case to which we have had access has this

Vol 160 mo—12

doctrine been extended to the class of cases to which this belongs.

If the plaintiff were seeking to enforce specific performance rather than to overthrow the contract, and the defendant were defending on the ground that the contract was without consideration other than that imparted by the seal, the doctrine announced in the excerpt already quoted from Pomeroy's Equity Jurisprudence would apply. But in a case like this the contract will be given full effect in both law and equity. [Leake on Con., 124, supra.]

In Riley v. Kershan, 52 Mo. 224, cited by plaintiff, it was said: "The established rule to be found in all the earlier cases is that the payment of part of a debt or liquidated damages is no satisfaction of the whole debt, even where the creditor agrees to receive a part for the whole and gives a receipt for the whole demand. But this rule must be so far qualified as not to include the common case of the payment of a debt by a fair and well understood compromise carried faithfully into effect *even if there were no release under seal."* The effect of the seal is by implication here fully recognized. The authorities fully establish the rule that where there is an overdue money demand liquidated and not disputed and a part only of it is paid, though this is accepted as full satisfaction, there is only part performance of the obligation in kind and the agreement to discharge the residue of the debt not paid is void for want of consideration. [Sutherland on Damages, 426.] This rule rests mainly upon a want of consideration for the new agreement or promise. But it is without application here for the reason that the agreement to discharge is evidenced by a release under seal which conclusively imports a consideration.

In Ryan v. Ward, 48 N. Y. 204, it was said: "A man can not by the payment of $1,500 pay an admitted debt of $2,000. This has never been the law. In such case nothing

Winter v. K. C. Cable Ry. Co.

less than a technical release under seal can bar a recovery."
I am referred to Saunders v. Blythe, 112 Mo. 1, where it was
said: "The release recited only the nominal consideration of
one dollar, but it was under seal and became an executed con-
tract upon delivery and acceptance. As such no other consid-
eration was necessary to support it, so far as concerns the legal
rights of the parties thereto; and no equities are involved or
have been invoked in the case." This statement of the law is
not at variance with what I have already stated it to be.
Though the release was under seal, it was not impregnable to
assault in equity on the ground of fraud or mistake, and this
was no doubt what was meant by the remark of the court in the
latter part of the above paragraph. The case recognizes fully
the force and effect of the rule that an instrument under seal
requires no other consideration for its support, and that such
instrument is valid until set aside for fraud or mistake. I
am therefore of the opinion that the release of the judgment
ought not to be overthrown for want of consideration.

It is further insisted by the defendant that the release is
supported by a valuable consideration as well as that imparted
by the seal. Chancellor KENT has defined a valuable consid-
eration to be one that is either a benefit to the party promising,
or some trouble or prejudice to the party to whom the promise
is made. [2 Kent Com. (2 Ed.), 465.] If the least benefit
or damage be received by the promisor from the promisee or a
third person, or if the promisee sustain any or the least injury
or detriment, it will constitute a sufficient consideration to ren-
der the agreement valid. A court will shut its eyes to the
inequality between the consideration and the promise. [Wirt
v. Sherman, 67 Mo. App. loc. cit. 172, and cases cited; Brown-
low v. Wollard, 66 Mo. App. 636.] In Hooker v. Ins. Co.,
69 Mo. App. 136, this court, in speaking through Judge ELLI-
SON, said: "The law is that a contract whereby the creditor

agrees to accept, or does accept, a sum of his debtor less than the debt, will not prevent the creditor recovering the whole of the original debt; for the reason the contract is without consideration. But if there be any benefit or even any legal possibility of benefit to the creditor thrown in, that additional weight will turn the scale and render the consideration sufficient to support the agreement." [Jeffrey v. Davis, 124 N. Y. 164.]

In the case just cited will be found many illustrations in support of the proposition quoted. Thus, if the payment of the lesser sum is provided to be paid at a different place from that where the original was to be paid, it is a sufficient consideration. [Foakes v. Boar, L. R. 9 App. Cas. 605.] So the receipt of a negotiable note for a less sum will discharge the whole of an open debt for the reason that it is more advantageous to the creditor to have the negotiable paper. [Jeffrey v. Davis, supra]. So, if the lesser sum be paid in discharge of the greater before the latter is due, it is a valid consideration. [Brooks v. White, 2 Met. 283.] And so if a third party pay a lessor sum to the creditor in agreement to discharge the whole debt of the debtor it is valid. [Wilkes v. Slaughter, 49 Ark. 237; Gordon v. Moore, 44 Ark. 349.]

The plaintiff, it is true, had judgment, but he could not enforce it by final process on account of the suits which the defendant had deemed necessary to bring to protect itself against the various conflicting claims set up to the judgment. Pending these suits the defendant, under the agreement, paid the $4,500 in full discharge in advance of the time when it could have been compelled to do so. Besides this, it took the risk incident to its election to make the payment to the Buchanan county curator before the rights of all the parties claiming the judgment had been judicially determined by the suits. In view of these, and other facts relating to the transaction, we

are inclined to think the release was supported by a sufficient consideration, deemed valuable in law, to support it.    [Leake on Contract (Eng. Ed.), 888; Savage v. Everman, 70 Pa. St. 315.]

It seems to me that whether the release be regarded as a technical release under seal or a release not under seal, it is supported by a sufficient consideration and ought to be upheld.    It is true that where the rights of an infant are involved, as in this case, courts will not search for technical rules to sustain transactions which are not characterized by the strictest fairness, yet we discover nothing in this case to render inapplicable the principles to which we have hereinbefore adverted.

I think that the decree of the circuit court should be reversed.

## MAJORITY OPINION OF THE COURT OF APPEALS.

GILL, J.—In my opinion the judgment of the circuit court is right and ought to be affirmed.    The learned judge who tried the case below has found that the so-called compromise or settlement of the infant's judgment against the cable company was procured by misrepresentation, and that the taking and acceptance of $4,500 in satisfaction of said judgment was without consideration and should not therefore bar the infant from recovering the balance justly due him.    From a patient consideration of the entire record, in the light of the authorities, I am of the same opinion.    It seems to me that the facts are about as stated in plaintiff's petition, which will be found quoted at length in Judge SMITH's opinion.    In April, 1886, the infant plaintiff obtained in the Jackson Circuit Court a judgment against the defendant for $5,000; the defendant appealed to the Supreme Court, giving a good

and sufficient appeal bond, and the judgment was affirmed by that court in December, 1889. Here, then, was an indisputable and unquestioned claim or demand for $5,000, bearing six per cent interest from April 22, 1886, which the infant plaintiff had against the defendant. And it is admitted that the same was, after the affirmance, valid and binding, and that the defendant and its securities on the appeal bond were all entirely solvent. This judgment with accrued interest to the date of the pretended settlement in March, 1892, amounted to about $6,800. In satisfaction of this sum the defendant paid to the infant's curator the sum of $4,500, and the curator entered on the margin of the judgment record at Kansas City an acknowledgment of full satisfaction thereof.

The effort of this suit is to get back of this record satisfaction, and establish the infant plaintiff's right to recover the balance due on the judgment. The rule of law is conceded that payment of part of an undisputed debt will not discharge the whole, even if expressly accepted for that purpose. The rule is thus comprehensively stated: "All claims for damages are payable in money. When a demand therefor is certain, or rendered certain by agreement or adjudication, and is no longer disputed, it can not be satisfied with any less amount than the precise amount owing. If a part is paid, there is a partial performance of the obligation of the party liable and no more. His payment is only a discharge *pro tanto*. This part payment may have been induced solely by the assurance that it would be accepted as full satisfaction, and it may have been possible to compel payment; still the party paying has done in kind only what he was under a legal obligation to do in respect to the amount paid, and the corresponding amount of the obligation is thereby satisfied, but no more; therefore the agreement of the creditor to discharge the residue is in a legal sense gratuitous and not binding." [1 Sutherland on Damages (2 Ed.), sec. 245.]

If, now, the rule just stated is to be applied in this case, then clearly the infant plaintiff is entitled to have the balance of his liquidated claim against the defendant. At the date of the so-called settlement (March, 1892), he had a final and conclusive judgment against the defendant which at that time called for $6,800. The defendant paid $4,500 and asked to be acquitted not only of that portion of the debt, but also of the remainder, amounting then to $2,300. This can not be allowed unless there be some consideration moving to the creditor for the discharge of the balance.

In this connection the claim is advanced that as the receipt or acknowledgment of satisfaction by the curator was made over his seal, the plaintiff is precluded from disputing the existence of a consideration—in other words, that such seal *"conclusively* imports a consideration" for the discharge of the entire debt. This contention is based on the theory that the marginal satisfaction of the judgment is to be treated as a technical common-law release under seal. It seems to me that this attaches more importance to the writing in question than it deserves. It is not a contract in the proper use of that term; is nothing more than an acknowledgment of the payment of the debt—an admission or declaration by the curator that the judgment in favor of his ward has been paid. While competent evidence tending to prove payment, it is in no sense conclusive, was entitled to no further binding force than any other written receipt, and is subject, therefore, to explanation or even contradiction. [Ryan v. Ward, 48 N. Y. 204.] A receipt or ordinary acknowledgment of satisfaction is all the order of the probate court authorized or intended the curator to give. It will be presumed that the probate court intended the satisfaction of judgment provided by the statute, and to be entered as there required. [R. S. 1889, secs. 6028, 6029, 6030, 6031, 6032.] In so compounding the judgment the

curator could only act in pursuance of and subject to the orders of the probate court. [R. S. 1889, secs. 5297, 5298.] These sections (6028, etc.), clearly do not contemplate such acknowledgments to be under seal nor to be evidenced by technical common law releases under seal. I am unwilling then, to say, because the plaintiff unnecessarily and without authority attached a scrawl to his signature in acknowledging satisfaction of the judgment, that said curator thereby estopped his ward from ever after inquiring into or impeaching the consideration of the alleged discharge.

Moreover, if this written satisfaction of the record should even be considered in the category of sealed contracts, it would yet be within the province of a court of equity to go behind the seal and inquire into the matter of consideration. "Equity, disregarding such form, and looking at the reality, always requires an actual consideration, and permits the want of it to be shown, notwithstanding the seal." [1 Pomeroy's Eq. (2 Ed.), sec. 383; also secs. 370-379, same volume.] This has been the doctrine of the chancery courts from the beginning; and as years have gone by, modern courts have gotten further from the influences of such rigid and barbarous dogmas of the ancient courts of law. In this State the *law* courts even have in a large measure been released from this subserviency to mere form. By section 2090 of the present statutory revision it is provided: "Whenever a specialty or other written contract for the payment of money, or the delivery of property, or for the performance of a duty, shall be the foundation of an action or defense in whole or in part, or shall be given in evidence in any court without being pleaded, the proper party may prove the want or failure of the consideration, in whole or in part, of such specialty or other written contract."

When now we get behind this so-called seal (which, as I

Winter v. K. C. Cable Ry. Co.

think, was uselessly and ineffectively attached to the marginal satisfaction) it seems clear to me that there was no consideration moving between the contracting parties for the satisfaction of the judgment, save and except only the payment of said $4,500. And if this be so, then the debt, which it was then conceded amounted to $6,800, was, according to the rule before announced, satisfied only to the extent of $4,500 and no further.

In order to understand the status of the parties at the date of the so-called settlement, it seems necessary to recall the main facts attending the controversy. In the early part of January, 1890, the mandate came back from the Supreme Court announcing the affirmance of the judgment of Willie Winter by next friend against the defendant. On the twenty-ninth day of the same month the public administrator of Buchanan county, and exofficio public curator, under the order of the probate court of said county, took charge of the estate of the minor plaintiff; and on the same day the attorney for the plaintiff in the main suit had the probate court of Jackson county appoint another curator. Each appointment had been made without knowledge of the other. Since the boy's residence was at the time in Buchanan county, it is clear that the first appointment was proper and the last improper, and so the parties seem to have subsequently agreed. Twelve days after the appointment of these curators (February 10, 1890), the next friend, who had prosecuted the suit for the minor, sued out execution against the defendant. Thereupon, on the same day, February 10, 1890, defendant filed in the Jackson Circuit Court a petition in the nature of a bill of interpleader—making the rightful curator of Buchanan county, and the party as well who was appointed curator in Jackson county, as also the next friend and attorney who had sued out the execution, all parties defendant, and in its petition set up that conflicting

claims were made by these curators and next friend as to the rightful custody of the proceeds of the judgment, and prayed the execution be enjoined and the parties be required to litigate their respective claims.   The defendant did not bring in the money due on the judgment as it might have done, and thereby relieve itself of any future liability in the premises. At the filing of the bill the court granted an order restraining the execution until a hearing could be had on the application for temporary injunction.   This was subsequently heard and on March 8, 1890, the court denied the application and dissolved the restraining order.   At once, on said March 8, and after dissolution of the injunction order, defendant filed in the circuit court a motion to quash the execution on the alleged ground that the next friend had no authority to order out such execution.   This motion was heard and overruled May 9, 1890, and defendant appealed to the Supreme Court.   At the date of the settlement (in March, 1892), the interpleader suit above mentioned, though still appearing on the docket of the Jackson Circuit Court, had in fact been abandoned by the defendant, and was ultimately dismissed by the court because not listed for trial for more than three terms as required by a rule of that court.   And at the time of said so-called compromise or settlement, the motion to quash the execution, which had been denied by the circuit court and appealed, was set for trial in the Supreme Court, and, as the witnesses put it, was about to be reached.   This appeal was dismissed ten days after the settlement.   It was now at the date of this settlement— when the injunction or interpleader suit began in March, 1890, had failed of its purpose, and was practically abandoned, and when the defendant's appeal on motion to quash the execution was about to be reached on the Supreme Court docket—the defendant, by its general counsel, prepared a written petition for the compromise and which said petition was through a

friendly attorney at St. Joseph presented to the infant's curator
who signed the same, and on which said petition the probate
court directed the settlement now attacked.   The curator was
induced to state in said petition that his ward's entire estate
consisted of a judgment against defendant for $5,000, and
"that the said judgment is and has been in litigation, and liti-
gation concerning the same is now pending both in the said
circuit court and the Supreme Court of said State, and it is
entirely uncertain when the said litigation will terminate, it
having been begun in the year 1885, and there being two suits
pending now instead of one as then, and three claimants for
the judgment now."   It was then stated that the railway com-
pany was willing to pay $4,500 cash in compromise, and set-
tlement, and authority for accepting this proposition was
asked.

As already stated, the petition for this compromise was
prepared by the defendant's counsel at Kansas City and pre-
sented to the curator at St. Joseph through a lawyer who was
at least in sympathy with the defendant, but whom the curator
trusted under the impression that said attorney was acting in
the interest of his ward.

Shortly after the settlement had been effected and the
$4,500 paid, the probate court entered an order rescinding
the former one authorizing the compromise wherein it recited
that said original order "was made on a mistake of facts as to
the amount due on said judgment, and as to litigation in rela-
tion thereto then pending, and in reliance by said administra-
tor upon the representations of said railway company, which
representations were not true; and it now appearing that said
judgment was final, that the same with interest amounting to
about $6,800 instead of $5,000 as represented, and that said
railway company and its securities who were and are liable
therefor are solvent, and it further appearing that pursuant

to said order of this court said administrator accepted said sum of $4,500 of said company and entered satisfaction thereof in good faith by mistake, as aforesaid; it is now ordered that said order directing a compromise of said judgment be and the same is now hereby set aside to the end that the same shall not prevent other and further proceedings for the collection of the balance remaining due and unpaid on said judgment, and that said administrator be and he is now here ordered to enter a credit on said judgment for said sum of $4,500, as of the date of the receipt thereof, instead of a satisfaction in full of said judgment."

The evidence shows that the curator and probate judge were deceived as to the extent of the judgment and that the compromise was effected under the impression that the infant's demand amounted only to $5,000 instead of $6,800; and further, it appears that the curator and probate judge were likewise deceived as to the nature of the litigation pending. They were told "that the said judgment is and has been in litigation, and litigation concerning the same is now pending in said circuit court and the Supreme Court, and it is entirely uncertain when the said litigation will terminate, it having been begun in the year 1885, and there being two suits pending now instead of one as then;" whereas, the facts were that there was no litigation pending or dispute as to the infant's rights in the premises. The only contest then existing, if contest it may be called, related solely to the question as to who was the proper custodian of the proceeds of the judgment after the same was collected. As between the minor plaintiff and defendant, all controversies had been settled by the judgment of a court of final resort; and the way was open at any time for defendant to pay said judgment, interest and costs. It could have safely paid to the sheriff holding the execution or into court when filing the bill of interpleader, or even to the curator who had been appointed by its (the defendant's) own direction.

But, however this may be, it is clear that the infant plaintiff was the absolute and unquestioned owner of the judgment, then amounting to $6,800, and the defendant ought not to be permitted to satisfy this by discount of $2,300, when for such deduction there was no consideration as between the debtor and the creditor.   There was no question at any time as to the perfect solvency of the defendant, and besides, it had given a good supersedeas bond.   It is true that defendant may have further delayed payment as it had done for two years, but yet the minor plaintiff was for this fully protected and compensated by the addition of interest which the law fixes.   But these vexatious lawsuits—whether brought about by defendant to harass opposing lawyers, or to delay the collection of a judgment which its counsel pronounce a great wrong, or whether merely to have the courts settle as to who should properly represent the minor—could furnish no consideration for throwing off $2,300 of a demand concerning which there was no longer any possible dispute.   "Payment of a lesser sum will not discharge a debtor for a greater sum without some additional consideration; the creditor must besides a part, receive something of benefit that he would not otherwise have had."   [54 Ill. App. 616.]   I agree with Judge SMITH when he says:   "Where the rights of an infant are involved, as in this case, courts will not search for technical rules to sustain transactions which are not characterized by the strictest fairness."   But with all due respect I must differ with him as to the nature of this so-called compromise.   As I read this record it discloses a transaction characterized by great unfairness toward the infant plaintiff and one which the courts ought not to sustain.

The contention that before plaintiff can get the relief here sought there should have been a tender back of the $4,500 paid by defendant, is without merit.   It seems to be well settled "that one who attempts to rescind a transaction on the ground

of fraud is not required to restore that which in any event he would be entitled to retain either by virtue of the contract sought to be set aside, or of the original liability." [Kloy v. Healy, 127 N. Y. 555, and authorities cited.] In the case just cited it is said: "While the sum retained should be taken into account in the award of relief, an offer to restore it is not a condition precedent to the bringing of an action to set aside the fraudulent release........If her action failed she was entitled to the sum received by virtue of the transaction itself. If she succeeded, the sum was less than she was concededly entitled to by the original judgment. In any event, therefore, she had only that which without dispute belonged to her, and a restoration or the offer thereof was unnecessary prior to the commencement of the action, for such conditions as might be essential to the protection of the defendant could be inserted in the judgment ultimately rendered."

A distinction exists between cases of this nature and where no liability at all is conceded, and was so recognized by us in Alexander v. Railroad, 54 Mo. App. 66, and by the St. Louis Court of Appeals, in opinion by BIGGS, J., in Girard v. Wheel Co., 46 Mo. App. l. c. 116, and by the Supreme Court in same case, 123 Mo. l. c. 383.

Judge ELLISON concurs in the views here expressed. The judgment of the circuit court will therefore be affirmed.