## East Tennessee Telephone Company, et al. v. Cook.

(Decided November 6, 1913).

### Appeal from Jessamine Circuit Court.

1. Automobiles—Action for Damages—Instructions.—In an action against an automobile owner for damages resulting from the fright of a horse alleged to have been occasioned by the excessive speed of the automobile, instructions examined and held to present the issue in a proper manner.

2. Instructions.—In civil actions it is not necessary for the court to give all the law of the case, but the instructions given should be correct as far as they go. If either party desires other instructions he should request them; unless requested the failure to give them is not error.

3. Instructions—Permanent Injury.—The giving of an instruction authorizing a recovery for the permanent impairment of ability to earn money will not be regarded as error where there is some, though slight, evidence of permanent injury, and the verdict is small.

GEO. C. WEBB and JOHN H. WELCH for appellants.

E. B. HOOVER for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Plaintiff, John O. Cook, brought this action against the defendants, East Tennessee Telephone Company, and C. G. Kerns, its employee, to recover damages alleged to have been sustained by reason of his horse becoming frightened at the approach of an automobile owned by the defendant telephone company and operated by Kerns. The jury returned a verdict in his favor for $772.50. The defendants appeal.

Briefly stated, the facts are these:

The East Tennessee Telephone Company owns and operates a telephone line in Jessamine County, Kentucky. At the time of the accident the defendant, Kerns, was an employee of the company and was engaged in in-

specting its telephone lines. Plaintiff, Cook, was a United States mail carrier in charge of the rural delivery along the Union Mills turnpike road. About 11:30 a. m., on April 15, 1911, plaintiff was driving down the road in a covered mail wagon. Defendant Kerns was in an automobile traveling in the opposite direction. He and plaintiff met at a place in the road where there was a slight embankment on the right of plaintiff. When the automobile passed plaintiff his horse became frightened and shied. The wagon was pulled off the pike and thrown over. The horse ran away. Plaintiff received a severe cut in his head, and was confined to his bed for several days. He incurred a doctor's bill of $20, and was compelled to employ a substitute carrier for 20 days at the price of $60. His harness and wagon were damaged to the extent of $30. His horse, for which he had paid $150, became "automobile shy" on account of fright, and the depreciation in his value was fixed at $100.

According to the evidence for plaintiff, his horse was perfectly gentle, and had passed hundreds of automobiles without taking fright. In front of plaintiff there was a two-horse wagon. The automobile passed the wagon on the left side, and undertook to cross the pike in front of plaintiff. The automobile was going at the rate of 25 or 30 miles an hour, and did not stop until it ran several yards past plaintiff. On the other hand, the evidence for the defendants was to the effect that there was no wagon in front of plaintiff. In passing plaintiff the automobile gave plenty of room. Its rate of speed at the time was only about 10 miles an hour. One of defendant's witnesses testified that he was in a buggy, and that the automobile passed him quite a distance from the scene of the accident. Thereafter he continued behind the automobile and was only a few feet away when the accident occurred.

A reversal is asked on the ground of errors in the instructions. Instructions Nos. 1 and 2 are as follows:

"1. If the jury believe from the evidence that on the occasion plaintiff was injured the defendants were operating an automobile along the public highway at a speed greater than was reasonable and proper, having regard to the traffic and use of the highway, and if they further believe from the evidence that by reason of that fact, if the jury find it to be a fact, the plaintiff's horse became frightened and overturned his wagon whereby the plaintiff was injured and his property damaged, the

jury should find for the plaintiff and fix the damages according to the third instruction.''

"2. Unless the jury believe from the evidence that the defendants were running the automobile at a greater rate of speed than was reasonable and proper, having regard to the traffic and use of the highway, and that by reason of that fact the plaintiff's horse became frightened and overturned his wagon, the jury should find for the defendants.''

Instruction No. 3 fixed the measure of damages.

It is insisted that instruction No. 1 is erroneous in that it fails definitely to restrict the cause of the horse's fright to the high and excessive speed of the automobile. In this connection it is argued that so long as an automobile is operated in a prudent manner and at a reasonable rate of speed it has the same rights on the highway as any other vehicle, and that for the fright of a horse caused by an automobile so operated no liability attaches. This phase of the case, it is claimed, was not presented by the instructions. In our opinion, the instructions given are not subject to the criticism that they did not definitely restrict the cause of the horse's fright to the high and excessive speed of the automobile. In order to find for plaintiff the jury, under instruction No. 1, were required to believe that the automobile was being operated at a rate of speed greater than was reasonably proper having regard for the traffic and the use of the highway, and by reason of this fact the horse became frightened. On the other hand, the jury were told in instruction No. 2 that unless they believed from the evidence that the defendant was running the automobile at a greater rate of speed than was reasonable and proper having regard for the traffic and use of the highway, and by reason of that fact the plaintiff's horse became frightened, the jury should find for the defendant. In other words, the whole case was made to depend on whether or not the speed of the automobile was excessive, and whether or not, if excessive, that fact caused the horse to take fright. As to the claim that these instructions did not properly present defendant's side of the case, it is sufficient to say that it is not the duty of the court in civil actions to give all the law of the case. All that is necessary is that the ·instructions given shall be correct so far as they go. If either party desires other instructions he should request them. In the present case the instructions given are correct, and defendants not hav-

ing offered an instruction presenting the theory of nonliability for fright occasioned by the ordinary operation of the automobile in a prudent manner, and at a reasonable rate of speed, the failure to give such an instruction was not error. L., H. & St. L. Ry. Co. v. Roberts, 144 Ky., 820; C., N. O. & T. P. Ry. Co. v. Martin, 146 Ky., 260.

The other ground for reversal is that the court erred in authorizing a recovery for permanent impairment of plaintiff's ability to earn money. In this connection it is insisted that no permanent injury was shown. The evidence does show that plaintiff was severely cut in the head, and was otherwise bruised and injured. He was confined to his bed for several days and suffered intensely. The trial occurred about a year and a half after the accident. After describing the pains in his neck, shoulder and head, plaintiff, in answer to the question whether or not he had gotten over these pains, stated "When I sit in one position my neck and shoulder hurt yet." Further along in his testimony he says that prior to the accident he could do any kind of labor, but he was then unable to labor the same way as he did before the accident. Here, then, was some, though slight, evidence of a permanent injury, and when considered in connection with the smallness of the verdict, we cannot say that the court erred to the prejudice of defendant in authorizing a recovery for permanent impairment of ability to earn money.

Judgment affirmed.