## The Otis Hidden Company v. Newhouse.

(Decided June 17, 1924.)

### Appeal from Jefferson Circuit Court (Common Pleas, Second Division).

1. Corporations—Liability of Wholesale Company Dependent on Agency of Salesman Selling Lamp to Person Injured on Elevator.—If head salesman of wholesale company, in taking plaintiff on elevator to show him a damaged lamp, was buying the lamp himself, and selling it to plaintiff on his own account, company was not liable for injuries to plaintiff on elevator; but if he was selling lamp for company, though contrary to its instructions, it was liable for his negligence, if he was acting within apparent scope of his authority.

2. Carriers—Negligence of Salesman in Operating Elevator, and Contributory Negligence, Held for Jury.—In action against wholesale house for injuries received by plaintiff, when he thought he was stepping into an elevator operated by defendant's salesman, negligence of defendant's agent, and plaintiff's contributory negligence, held for jury.

3. Appeal and Error—No Complaint of General Instruction on Contributory Negligence, where Specific Instruction Not Requested. Defendant cannot complain that instruction on contributory negligence was too general, where no request for a more specific one was made.

4. Trial—Not Incumbent on Court to Give all Law of Case.—It is not incumbent on court to give all law of case, but parties must ask further instructions when they desire them.

5. Trial—All Instructions to be Read Together.—All instructions given are to be read together.

BASKIN & VAUGHAN and ARTHUR M. RUTLEDGE for appellant.

FRED FORCHT and MERIT O'NEAL for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Affirming.

Appellee, Wilbur I. Newhouse, was a teller at the National Bank of Kentucky, which was located at the corner of 5th and Main streets, Louisville, Kentucky. The

appellant, the Otis Hidden Company, was a wholesale dealer in house furnishings on Main street, a few doors east of 4th street. In July, 1921, Newhouse went to the store of the Otis Hidden Company to look at a bed and was taken by one of the boys to the fourth floor to see the bed. After he had looked at the bed the boy showed him a lamp, the shades of which had been damaged a little, and told him that he could get it cheaper. J. W. Tuell was the head salesman; he was at the bank on August 18th and while there Newhouse asked him about the lamp. As a result of this conversation Newhouse, after banking hours, 'phoned Tuell that he would come up and look at the lamp. When he reached the house he asked Tuell to see the lamp. Tuell said, "All right, I will take you up." Thereupon they went to the elevator; the elevator was not operated by a regular man, but each person who took customers up in the elevator pulled the rope and operated it. In this way Tuell took Newhouse to the fourth floor, where they got off the elevator and walked over and looked at the lamp, which was about ten or fifteen feet away from the elevator. They were looking at the lamp two or three minutes; Newhouse asked Tuell to set the lamp aside and said that he would take it if his wife liked it. Tuell set the lamp aside and they then started back to the elevator, Tuell being a little to the left of Newhouse and a little in front of him. As to what happened when they reached the elevator the testimony is conflicting. Newhouse says that Tuell did not ring any bell but opened the door and made a kind of motion with his hand (indicating), which he thought meant to step in, and he walked right in; that Tuell opened the door wide enough for him to step in and he stepped in without touching anything. It was dark; the elevator was not in place, and he fell to about the second floor, falling upon the top of the elevator as it was coming up.

Tuell says that when they reached the elevator he rang the bell, which was the signal for the elevator to be moved, and after ringing the bell opened the door about a foot and reached in with his hand to pull the rope to bring the elevator up, and as he was doing this he looked around and saw Newhouse going down the shaft, feet foremost; that he made no motion with his hand except to reach for the rope. He also says that it was light in the room; that light was burning in the room a few feet from the elevator.

The proof for appellant is to the effect that appellant is exclusively a wholesale dealer and sells nothing to the retail trade, but that its employes may buy damaged articles, but only on their own account, and it proved by Tuell that he told Newhouse that he thought he could arrange to get it for him; that he would have to buy it himself and sell it to him. On the other hand Newhouse swears that he did not tell him that appellant would not sell him any lamp or that he would have to buy it himself and sell it to him, and that he said the shades of the lamp were damaged and that was the reason they could sell them retail.

The plaintiff recovered a judgment for $15,000.00. The defendant appeals.

Newhouse was frightfully injured and no complaint is made of the amount of the judgment, but it is earnestly insisted that a peremptory instruction to find for the defendant should have been given on two grounds: 1. That Tuell was not in the service of the defendant in selling the lamp, as the house did not sell anything by retail. 2. That Newhouse was guilty of contributory negligence.

1. Tuell was the head salesman of the house. If he was buying the lamp himself and selling it to Newhouse on his own account he did not represent the house in the transaction, but if he was selling the lamp for the house, although contrary to its instructions, the appellant is liable for his negligence, for he was acting within the apparent scope of his authority. He does not say that he ever told Newhouse of the rules of the house, and Newhouse says that he told him that they could sell the lamps at retail because they were damaged. The boy who had first shown him the lamp told him the same thing. Newhouse, if his testimony is true, had no notice that Tuell was not acting within his authority in selling him the lamp. In such cases the principal, who confers the appearance of authority, is liable for the acts of his agent within the apparent scope of the agent's powers. Tuell being the head salesman, it was within the apparent scope of his powers to sell the damaged lamps, notwithstanding the contrary secret instructions to him.

2. As to the question of negligence on the part of Tuell and contributory negligence on the part of Newhouse, the case is not without difficulty. In Phillipps Co. v. Pruitt, 83 S. W. 628, the appellant operated a large retail store in Owensboro. Mrs. Pruitt entered the store

and being desirous of going to the second floor walked back to the elevator and finding the door open and a boy seemingly in charge, erroneously assumed that the car was in place, stepped in and fell to the bottom of the shaft. In that case it was held that the question of negligence on the part of defendant and contributory negligence on the part of the plaintiff was for the jury. The facts are thus stated by the court:

"The elevator in appellant's establishment is operated by means of hydraulic power, and it seems that when the river is muddy the silt enters the valves and has the effect of making the elevator car move up almost imperceptibly, without any fault or defect in the machinery. At the time appellee entered the store and was making her way to the elevator (she being familiar with the premises), the young lady cashier of appellant, whose duty it was to see that the door of the elevator was kept shut when not in use, observed that it was ajar, and the car had, under the influence of the cause heretofore explained, crept slowly upward some 12 or 15 feet, whereupon she, without knowing of the approach of appellee, told one of the bundle boys, Homer Bradley, to pull it down and shut the door. This he proceeded at once to do, being equally ignorant of the approach of appellee. Going to the door, he opened it wide, reached in for the rope, and attempted to pull the car down. This movement on his part seems to have been understood by appellee (who, by this time, had reached the door of the elevator) as an invitation to enter, which she did, falling as before described."

A like ruling was made in Eilerman v. Farmer, 118 S. W. 289. The facts in that case are thus stated by the court:

"The appellants conduct a wholesale and retail clothing business, occupying several floors of a building. The business is conducted mainly on the first floor. In the basement of the store there were some dry goods boxes which appellants usually disposed of by wholesale, but which they sometimes sold by retail as a matter of accommodation. Appellee, desiring to purchase some of these boxes, went to appellants' store on the occasion of his injury. Appellee was a man 68 years of age, and was accom-

panied by his grandson, a boy 13 years of age. He asked an employe of appellants, who was standing on the sidewalk near the entrance, if they had any boxes for sale, and was told to go inside. On entering the store, he inquired of one of the clerks about the boxes, and was referred to Michael Winstel, another clerk. According to the testimony of appellee, the latter told Winstel that he wanted to get some boxes, and Winstel said, 'All right, kept them in the cellar,' at the same time directing them to take the elevator. According to the testimony of Winstel he, upon being informed of appellee's wishes, simply said to him, 'Step back.' Winstel then proceeded to the door of the elevator, followed at a distance of from 3 to 15 feet (variously estimated by different witnesses) by appellee and his grandson. The elevator in use in the store was for the accommodation of both freight and passengers. No particular man was in charge of the elevator. It was operated by such clerks as had occasion to use it. In order to operate the elevator, it was necessary for one to open the gate of the shaft, reach in, and take hold of the ropes controlling the elevator. It was the custom of the clerks, when the elevator was not at the floor where were located the parties who intended to use it, to open the door of the shaft and first shake the control ropes in order to warn anyone that might be on the elevator at another floor, and then, by a pull of the control ropes, bring it to the desired position. When Winstel reached the elevator, he opened the door of the shaft. At this point the evidence is very conflicting. According to the testimony of appellee and his grandson, Winstel, upon opening the gate, turned to appellee and beckoned him to step into the elevator. When this was done, appellee passed through the gate, stepped into the opening, and fell to the cellar below. On the other hand, however, the testimony for appellants is to the effect that, when Winstel reached the shaft, he grasped the control ropes of the elevator, shook them to give warning to those above, and, having received the words, 'All right,' from the clerk above, pulled the rope for the purpose of causing the elevator to descend; that while standing there, with his back toward appellee, watching the descent of the elevator and retaining his grasp upon the two ropes with both hands

in order to check the elevator when it should arrive at the first floor, appellee stepped past him and fell into the elevator shaft.''

This case cannot be distinguished from those cited.

It is also insisted that the court erred in its instruction to the jury on contributory negligence. That instruction is in the usual general form on contributory negligence. It is complained that a more specific instruction should have been given and that the court should have told the jury that if Newhouse saw or, by the exercise of ordinary care, could have seen that the elevator was not in position at the time he attempted to enter it they should find for the defendant. But in fact, appellant did not ask this instruction on the trial. The instruction given by the court was correct as far as it went. If the defendant wished it made more specific, it should have asked this. In civil cases it is not incumbent on the court to give all the law of the case. The parties must ask further instructions when they desire them, and failing to do so cannot complain that further instructions were not given. Madisonville, etc., R. Co. v. Thomas, 140 Ky. 143; Chicago Veneer Co. v. Jones, 143 Ky. 21; East Tenn. Tel. Co. v. Cook, 155 Ky. 649. The jury was told by instruction 1 that they could not find for the plaintiff unless they believed that ''The plaintiff in the exercise of ordinary care when he attempted to enter the elevator failed to discover that the elevator cage was not in proper position.'' All the instructions of the court are to be read together. Instruction 3, when read with instruction 1, clearly submitted the question, whether plaintiff failed to discover that the elevator cage was not in proper position while in the exercise of ordinary care.

Judgment affirmed.