ALLENBACH, ET AL. *v.* RIDENOUR, ET AL.

No. 2822

July 5, 1929.  279 P. 32.

*Barry & Barry,* for Appellants:

*E. F. Lunsford, Green & Lunsford,* and *Anthony M. Turano,* for Respondents:

## OPINION

By the Court, DUCKER, C. J.:

Respondents, surviving daughters of D. W. Ridenour and Mary Jane Ridenour, brought this action against the surviving sons of the latter, individually and as administrators of their parents' estates, to have a deed canceled and to compel them as administrators to list and inventory the lands described in said deed as the property of said estates, and for further relief. The principal question in the case is whether or not a delivery of the deed was made by the father, D. W. Ridenour, to his son, C. D. Ridenour. The trial court found that there was no delivery of the deed. From the judgment in favor of the daughters, and the order denying a new trial, defendants have appealed.

The following is a summary of the facts about which there is no dispute: D. W. Ridenour died in the city of Reno, in this state, on the 2d day of September, 1922, and left a will devising all his property to his wife, Mary Jane Ridenour, for life, with remainder to his four children, Hattie Ridenour Allenbach, Echo Ridenour Gerow, S. D. Ridenour, and C. D. Ridenour, share and share alike. On the 23d day of August, 1919, he had made and acknowledged before a notary public a deed conveying the property involved in this suit to

his son, C. D. Ridenour. A few days after the death of D. W. Ridenour, all of said children and their mother went to the Scheeline Bank in Reno, and there found the deed in a safe-deposit box of said bank standing in the name of D. W. Ridenour. The deed was taken out and delivered to C. D. Ridenour, and he placed it on record, went into possession of the property, and has remained in such possession up to the present time. The will of D. W. Ridenour was admitted to probate in the month of September, 1922. Mary Jane Ridenour died on the 11th day of November, 1925. In the month of January, 1926, C. D. Ridenour and S. D. Ridenour were appointed administrators of the estates of D. W. Ridenour and Mary Jane Ridenour, respectively.

■ The evidence offered by respondents to establish nondelivery is substantially as follows: As has been observed, the deed, signed and acknowledged by the father, was found in his safe-deposit box in the bank a few days after his death. The grantee did not know until that time that such a deed had been executed. Only one key to the box had been issued by the bank; and that to the father. According to the custom of the bank, he was the only person entitled to have access to the box. The cashier of the bank testified very positively that the mother never had access to the box. After the execution of the conveyance the property was always assessed to the father, and he continued to pay the taxes up to the time of his death. Subsequent to the execution of the deed he granted a lease on the property and an option to purchase the same. On the 23d day of August, 1919, D. W. Ridenour executed a will, in which he made this declaration: "I have also by deed conveyed to my son, C. D. Ridenour, of Reno, Nevada, the certain ranch in Washoe County, formerly known as the Lyell ranch, together with all live stock, farming implements and other personal property belonging to me, kept and used in connection with the said ranch, which said deed has been or will be placed in escrow with said Scheeline Banking & Trust Company to be delivered upon my death."

■ We think the evidence is sufficient to support the finding of nondelivery. Upon the evidence the court could legitimately conclude that the deed, from the time it was signed until the subsequent death of the father, was never out of his possesson or control. It is established by the great weight of authority that the delivery of a deed to a third person for the use of the grantee will not be effectual, unless it is made in such a manner as to show that the grantor has voluntarily relinquished all control over the instrument. So long as the grantor retains any right to recall the deed from the hands of the depository, there is no delivery. It is unnecessary to cite authority in support of this rule.

The evidence offered by respondents supports their view that a delivery of the deed in the lifetime of the grantor was not intended. The declaration of the testator in his will that the "deed has been or will be placed in escrow with the said Scheeline Banking & Trust Company to be delivered upon my death" supports that view. So do his acts subsequent to the execution of the deed, indicating ownership of the property. The payment of the taxes on it to the time of his death, the execution of a lease upon the property, and giving an option to purchase, all tend to show that the father did not understand that he had parted with the title. At the most the execution of the deed and the testator's declaration in his will concerning it indicate that it was his intention that upon his death his son should have the property.

■ A delivery of the deed in the lifetime of the grantor, however, was necessary to pass the title. "And it is unquestionably the general rule," as stated by the court in Fisher v. Oliver, 174 Cal. 781, 164 P. 800, "that, where a deed remains in the possession of a grantor, to be delivered to take effect after his death, the deed is void for want of delivery during his lifetime." This general rule is thus stated in 18 C. J. 208: "A deed executed by the grantor with the intention of having it take effect after his death, but which he

retains in his possession or control, will be ineffectual to pass title for want of delivery."

Considering the case from the standpoint of appellants' evidence, we are of the opinion that the testimony of the two witnesses produced by the appellants, which is to the effect that some time before his death he told them that he intended to give the ranch to his son, C. D. Ridenour, and the acts and declarations of the father, testified to by the appellants and their wives, signifying his desire to give the ranch to his son, have little or no bearing upon the question of delivery. Noble v. Tipton, 219 Ill. 182, 76 N. E. 151, 3 L. R. A. (N. S.) 645. The statements, if true, are entirely consistent with the intention expressed in the will that the son was to have the property upon the testator's death.

But, if it were clearly established that he had intended a delivery of the deed in his lifetime, this alone would not be sufficient to pass title. For, as the court said in Fisher v. Oliver, supra: "For, saving under exceptional circumstances which do not here arise, ownership of real estate, so far as that ownership is to be parted with by deed, necessitates a delivery of that deed to terminate the grantor's title."

Concerning the requisite of delivery, it is pertinently stated in 8 R. C. L. p. 974: "Certainly no title passes in its absence, even though the intent to deliver is clear and the failure to deliver due to accident."

Further considering the case from the standpoint of appellants' evidence, we find that S. D. Ridenour testified that his father told him he had deeded the two ranches to him and his brother, C. D. Ridenour, and that the mother had the deeds; that after his father's death his mother told him that the father told her he had deeded the two ranches to him and his brother, and that she had the deeds and had had them for a long time; that after his father's funeral his mother told the witness that she had the key to the safety-deposit box, and had had it for a long time. Mrs. S. D. Ridenour testified as to the mother having three keys on a ring and

telling the witness that one was the key to the bank box, and also that the mother on one occasion when the father was out of town received from him a check and note and said: "I must go down and put these things away. I don't like to keep anything like this in the house, because some one got in and got Mr. Ridenour's suit case open." Mrs. C. D. Ridenour testified that she heard the mother say she had the key to the safety-deposit box.

It is argued that the declarations of the father and mother, that he had deeded the ranches to the boys and that she had the deeds, show a delivery of the deed in question by the grantor in his lifetime to the mother. The fact that the deed was found in the safety-deposit box shortly after the fathers death is sought to be accounted for upon the theory that the mother either gave the deed back to the grantor, and he placed it in the box, or, having the key to the box, she placed the deed there herself. It is argued that the declaration of the father, testified to by S. D. Ridenour, to the effect that he had deeded the property to the sons, and that the mother had the deeds, stands in the record undenied. This is true as to any direct evidence to that effect, but there is other evidence sufficient to make a substantial conflict in the evidence on the point of such a delivery in the lifetime of the grantor. This conflict, under well-settled principles, precludes this court from disturbing the finding of the trial court to the effect that the deed from the date of its signing until the death of the father remained continuously and exclusively in his possession and under his dominion and control.

The circumstances in evidence, which, in our opinion, make such a conflict, are substantially as follows: Both respondents testified that the mother told them, shortly after the opening of the box, that she never knew of the deeds. This is certainly opposed to the testimony of S. D. Ridenour, in which he stated that both parents told him the father had deeded the ranches to him and C. D. Ridenour, and that the mother had the deeds, and the testimony of the respondents as to this declaration

of the mother is certainly opposed to the theory that the deeds may have been delivered to the mother and by her returned to the father. The declaration of the mother that she never knew of the deed also conflicts with the theory that she had the key to the box and may have placed the deed in it herself after it was delivered to her. The testimony of the bank cashier that she had no access to the safety-deposit box is in flat opposition to that theory. The declaration of the will of the testator that "said deed has been or will be placed in escrow with said Scheeline Banking & Trust Company, to be delivered upon my death," was relevant to be considered, as bearing against the claim that a delivery had been made to the mother. So, on the whole testimony, we cannot say, in opposition to the finding of the trial court, that the testator actually parted with the deed as claimed, with the intent of placing it beyond his control.

It is insisted that the case of Moore v. Trott, 162 Cal. 274, 122 P. 462, is an authority of weight in appellants' favor. That case is readily distinguished from the instant case on one feature at least. In the Moore case there was no question of the deposit of the deed with a third person for the use of the grantee in case the grantor died. The grantor recovered from his illness, and on the first appeal (Moore v. Trott, 156 Cal. 353, 104 P. 578, 134 Am. St. Rep. 131) it was held that the evidence was insufficient to show that the grantor had effectually parted with control over the instrument. The grantor, after his recovery, did not take the deed from the depository, and it remained with the latter until the grantor's death. On the second appeal (162 Cal. 274, 122 P. 462) it was held that delivery had been rendered effective by subsequent acts and declarations of the grantor showing his intent to part with control of the deed, although the depository was not informed of the grantor's changed intention. The court was of the opinion that the added evidence was sufficient to support the finding of delivery, saying that it was "fairly inferable that after his [Moore's] return

from the Los Angeles hospital, finding himself in failing health, he intended that the deeds which he had left with Tietzen should absolutely be delivered, without power of revocation upon his part, and that he expressed this intent to the grantee under such circumstances as to perfect the delivery." But in the case presented here there is substantial evidence to sustain the finding of the trial court to the effect that the deed was never placed in the possession of a third party.

The case of Stone v. Daily, 181 Cal. 571, 185 P. 665, relied on by the appellants, is also easily distinguished. In that case, as in the case before us, the deed was in the possession of the grantor when she died, but it appeared in the former case, by evidence amounting to positive proof, that the grantor had formerly made an absolute delivery to a third person, and had merely retaken the deed into her possession in accordance with her previous intention to insure its not being recorded, because she did not wish her husband to know anything about it.

The question of whether or not there has been a delivery must be determined upon the facts of each particular case, and, at least in the respect pointed out in the foregoing cases, the facts are dissimilar to the situation presented here. When title to real estate is claimed by the grantee by a deed found to have been in the possession of the grantor at the time of his death, and of which the grantee had no previous knowledge, as in this case, evidence to overcome the presumption of nondelivery flowing from the facts must be strong and convincing. The situation is stated in Wiggins v. Lusk, 12 Ill. 132, in which the court said:

"The evidence introduced on the part of the plaintiff showed, that the deed, after being acknowledged, was retained by the grantor, and was found among his papers, after his decease. The grantee was not present when the deed was executed, and it is very evident that he was not aware of its existence, until after the death of the grantor. It is an irresistible inference from this proof, that the grantor never parted with the

control over the deed; in other words, it effectually rebuts any presumption arising from the other facts of the case, that the deed was ever delivered to the grantor [grantee], or to any one for his use. It was, no doubt, at one time, the intention of the grantor to convey the land to McDowell, but he died without carrying the intention into effect. His design was but in part executed; it was never consummated, so as to give the deed any legal operation."

Stress is placed on the following declaration in the will: "I have also by deed conveyed to my son, C. D. Ridenour, of Reno, Nevada, that certain ranch in Washoe County, formerly known as the Lyell ranch," etc. We see no force in the claim that this declaration tends to prove a delivery of the deed. It is merely a conclusion of the grantor. What he meant is explained in the statement which immediately follows, to wit: "Which said deed has been or will be placed in escrow in the Scheeline Banking & Trust Company to be delivered upon my death."

The same contention was made in Noble v. Tipton, 219 Ill. 182, 76 N. E. 151, 3 L. R. A. (N. S.) 645. The recital in the will in that case was that the testator had deeded the home farm to his son. The court was of the opinion that such a recital did not aid in establishing that there had been a valid delivery of the deed.

Another point made by the appellants is that, because the deed was recorded and was in the possession of the grantee, it is presumed to have been delivered, and the burden of proof was on the respondents to show nondelivery. In reply to this contention it is necessary only to say that there was substantial evidence in the record to justify the trial court in concluding that any presumption flowing from these facts was rebutted.

It is contended that, even though the deed was never delivered, the will refers to the deed as having been executed, and the deed being actually in existence at the time the will was made, and being identified, it becomes a part of the will as a devise after death. The contention is untenable. It is based on the declaration

in the will heretofore mentioned to the effect that the testator had by deed conveyed the Lyell ranch, together with certain personal property, to his son, C. D. Ridenour. It is obvious that the reference in the will to the deed does not adopt the deed as a part of the will, nor does it otherwise appear therefrom that the testator intended to give the property described in the deed by will. It expresses merely the opinion of the testator that he had conveyed by deed to take effect on his death. It cannot, therefore, be taken as a devise by implication.

The case of Noble v. Tipton, supra, is directly in point. In the latter case the recital in the will was that the testator had deeded the home farm to his son Thomas. It was held that this recital could not give the effect of a devise. The rule on the subject, recognized and applied, was declared to be as follows: "* * * Where a recital in a will is to the effect that the testator has devised something in another part of the will when in fact he has not done so, the erroneous recital may operate as a devise by implication of the same property, for the reason that it shows an intention to devise the property by the will; but where the recital is to the effect that the testator has by some other instrument given to a certain person named in the recital, property, when in fact he has not done so, such a recital does not disclose an intention to give by the will, and in such a case resort must be had to the other instrument and not to the will."

The rule as stated above is uniformly accepted. In Page on Wills, sec. 468, it is stated as follows: "But where the testator in his will, recites erroneously that he has conveyed certain of his real estate by deed to a certain named person, it does not show an intention to dispose of the property by will, but merely testator's opinion as to the legal effect of some pre-existing instrument. If, therefore, such pre-existing deed is for any reason invalid, the reference to it in the will cannot be held to amount to a devise by implication of the property described in such will to the grantee therein."

To the same effect are Koger, et al. v. Koger, et al. (Ky.) 92 S. W. 1167; Zimmerman v. Hafer, 81 Md. 347, 32 A. 316; Smith v. Smith, 113 Md. 495, 77 A. 975, 31 L. R. A. (N. S.) 922, 140 Am. St. Rep. 435; Underhill on the Law of Wills, sec. 475; 40 Cyc. pp. 1390, 1391. The instant case falls precisely with the rule so uniformly recognized.

██ Another question presented by appellants arises from the agreement in writing made by both the parties to this action and their mother, which is pleaded by the answer. It reads as follows:

"Whereas, the said Mary J. Ridenour is the widow of David W. Ridenour, deceased, and the remainder of the parties hereto are the children of the said David W. Ridenour, deceased, and said Mary J. Ridenour; and

"Whereas, the said David W. Ridenour, deceased, by last will and testament bequeathed what is known as the 'Susanville Ranch' and personal property to S. D. Ridenour, and bequeathed what is known as the 'Lisle Ranch' in Washoe County, Nevada, to C. D. Ridenour, and bequeathed all of the rest, residue, and remainder of the property to the said Mary J. Ridenour, for life, with the remainder to the said C. D. Ridenour, S. D. Ridenour, Hattie Allenbach and Echo Gerow.

"Now, therefore, it is hereby agreed by and between all of the parties hereto that the said Mary J. Ridenour, if she sees fit, may advance to the said Hattie Allenbach the sum of $2,000 out of the funds of said estate, and to the said Echo Gerow the sum of $2,000 out of the funds of said estate; and

"It is further agreed that, if none of the parties hereto shall make a contest, or objection, to the probating of said will and the distribution of the property as therein stated, then and in such case the sums hereby advanced to the said Hattie Allenbach and to the said Echo Gerow shall not be deducted from portions hereinafter coming to the last-named parties under the terms of said will, but shall be regarded as a clear gift to each of them, and the said Hattie Allenbach and the said Echo Gerow hereby both agree that in consideration

of the above they will make no protest and present no objection to the probating of said will or the distribution of said property in accordance therewith.

"In witness whereof, the parties hereinabove named have hereunto set their hands the day and year hereinabove first written.

"Mrs. D. W. Ridenour.
"S. D. Ridenour.
"C. D. Ridenour.
"Mrs. Harriet Allenbach.
"Mrs. J. W. Gerow."

It is alleged in connection with the agreement that at the time it was made the parties to it had met shortly after the death of the father for the purpose of discussing the provisions of his will, and it was thereupon fully understood between the parties to this action and their mother that the father intended by the terms of his will that C. D. Ridenour should have the property in question, that upon the execution of the agreement the mother paid to the daughters the sum of $2,000 each, and that said daughters have ever since retained the same and have never called for a rescission of the agreement or offered to return the money. It is therefore claimed by appellants that respondents are estopped from a recovery in the case.

It is obvious that the agreement, which is admitted in the reply, is based on the assumption that the father had bequeathed the ranches to appellants. That this was a mistaken belief was pleaded in the reply, and the court found, in accordance with the allegations thereof, that all of the parties to the agreement mistakenly believed that the father had bequeathed the ranches to his sons; that this was the sole consideration of the agreement; that if it had not been for their mistaken belief in this regard the respondents would not have signed the agreement; that subsequent to the signing of said agreement the mother paid to each of the plaintiffs (respondents) the sum of $2,000 out of the funds of her husband's estate; that the plaintiffs have offered to allow judgment and decree to go against them

in this action, adjudging and decreeing that the said sum of $2,000 advanced to each of them be deducted from the distributive shares or portions of the mother's estate. The court further found that there was sufficient money in the estate to withhold the sum of $1,000 from the distributive share of each of the respondents. The trial court concluded that respondents were entitled to have the agreement rescinded, and it was so decreed. There is sufficient evidence to support the findings.

The jurisdiction of a court of equity to decree the rescission of a contract for the mutual mistake of fact, or where even one of the parties was laboring under such a mistake, is too well recognized to require discussion. The mistake in this case, namely, the belief that the father had bequeathed the ranches to his sons, affected the substance of the agreement. It was, in fact, the basis of the agreement, and in such cases, whether the mistake is unilateral or bilateral, equity has jurisdiction to furnish relief. But appellants insist that, in order to effect a rescission, the parties rescinding must restore everything received by them under the contract, and that respondents in this case have not restored or offered to restore the $2,000 they each received under the agreement. It is a general rule, heretofore recognized by this court, that a party cannot rescind a contract and at the same time retain possession of the consideration, in whole or in part, which he received under it. Bishop v. Stewart, 13 Nev. 41.

But the rule is not applicable to a case like this. A party is not obliged to return that which he will be entitled to retain, even though cancellation be decreed. 6 Pomeroy, Equity Jurisprudence, 688. The respondents were entitled, under the law applicable to the facts of this case, to ultimately receive and retain, as a part of their distributive shares of the estate of their deceased parents, the moneys advanced to them. The court found that there would be more than sufficient money in the estates to withhold the amount they had received. There is evidence to support this finding. Respondents in their reply offered to allow judgment

and decree to be entered against them in that respect. The court, by its judgment, in deducting the said amounts from. what they were otherwise entitled to receive, has placed the parties in the same position as they were before the $2,000 was advanced to them. Restoration of the amounts received under the agreement would, under such circumstances, have been unnecessary to do justice, and the law does not require idle acts. It would be an idle act to restore that which ultimately a party would be entitled to receive and retain. This case is therefore clearly distinguishable from the class of cases illustrating the general rule requiring the restoration of money received before the commencement of an action. Under the facts the court could and did accomplish restoration by its decree. Thackrah v. Haas, 119 U. S. 499, 7 S. Ct. 311, 30 L. Ed. 486; Harris v. Equitable Life Assurance Society, 64 N. Y. 196; Kley v. Healy, 127 N. Y. 555, 28 N. E. 593; Collier v. Collier, 137 Ga. 658–667, 74 S. E. 275, Ann. Cas. 1913A, 1110; Winter v. K. C. Cable Ry. Co., 160 Mo. 159, 61 S. W. 606; Reggio v. Warren, 207 Mass. 525, 93 N. E. 805, 32 L. R. A. (N. S.) 340, 20 Ann. Cas. 1244; 24 Am. & Eng. Encyc. of Law (2d ed.) pp. 621, 622; 9 C. J. sec. 107, p. 1215; 6 Pom. Eq. Juris. sec. 688.

We have examined all of the cases cited by appellants in support of their position, but do not find any of them in point on the facts of this case. In Kelley v. Owens, 120 Cal. 502, 47 P. 369, cited by appellants, the rule we hold applicable was expressly recognized in the following language: "There are exceptional cases where restoration or an offer to restore before suit brought is not necessary—as, for instance, * * *. where it clearly appears that the defendant could not possibly have been injuriously affected by a failure to restore."

Such is the case before us. It is also recognized in Richards v. Fraser, 122 Cal. 456, 55 P. 246, quoted from in Matteson v. Wagoner, 147 Cal. 739, 82 P. 436, cited by appellant in the following statement: "One who

attempts to rescind a transaction on the ground of fraud is not required to restore that which, in any event, he would be entitled to retain," quoted approvingly from Kley v. Healy, 127 N. Y. 555, 28 N. E. 593.

In Hill v. Northern Pacific Railway Co. (C. C. A.) 113 F. 914, cited by appellant, the court quotes approvingly from Vandervelden v. Chicago & N. W. Ry. Co. (C. C.) 61 F. 55, in which the class of cases to which the instant case belongs is referred to as follows: "There is a class of cases wherein the facts are such that the court, without a repayment or tender on the part of the plaintiff has it within its power to protect fully the interests of the other party in case of rescission, and in such cases the court may proceed to a hearing without requiring repayment or a tender." We hold, therefore, that restoration or offer to restore was not a condition precedent to respondents' right of action.

■ In his closing brief counsel for appellants for the first time raises an objection to the jurisdiction of the district court acting as a court of equity in this case. He claims that it had not the power to hear and determine the subject matter in controversy as such a jurisdiction was exclusively in the probate court. The question has been determined, and we think correctly, in Re Singleton's Estate, 26 Nev. 106, 64 P. 513. In that case it was held that the probate court, in the absence of a statute, has no jurisdiction to adjudicate disputed rights against an estate. Such is the nature of this case. Appellant C. D. Ridenour claims the property involved against the title of the estate. He claims it by deed, which has been shown to be void for want of delivery. We think In Re Singleton's Estate was correctly decided and deem it unnecessary to elaborate upon it. It declares the law of this case.

■ It is contended further that, whatever may be said of the judgment as to the real estate, the court had no jurisdiction to enter judgment against appellant C. D. Ridenour for the rental value of the property, and requiring him to account for the same to the administrator of the estate. As to this it would seem to be

sufficient to revert only to the settled principle that a court of equity, having jurisdiction of the subject matter of a suit is entitled to retain jurisdiction for the purpose of giving complete relief. 21 C. P. pp. 134, 135. And in so doing it may establish purely legal rights and grant legal remedies, which would otherwise be beyond its power. 21 C. J. 138.

Although the recovery of rents is usually a matter solely of legal cognizance, when a court of equity has taken jurisdiction to set aside a title, it may also take an account of rents received through such title and award them to the rightful owner. Whetstone v. McQueen, 137 Ala. 301, 34 So. 229; Conklin v. Foster, 57 Ill. 104; Holeton v. Thayer, 86 Ill. App. 526; Martin v. Martin, 44 Kan. 295, 24 P. 418; Canton v. McGraw, 67 Md. 583, 11 A. 287.

The judgment is affirmed.

COLEMAN, J.: I concur.

SANDERS, J., dissenting:

The issue made by the pleadings in this case involves primarily the construction of two instruments—one a deed which is made a part of the plaintiffs' complaint, and the other a will which is made a part of the defendants' answer to the complaint. The main question for decision is whether the instrument, which possesses the formalities of a deed, is a deed or a will. The instrument contains the following provisions:

"The above-described real property, ditch, and water rights being the same property conveyed to said D. W. Ridenour by that certain deed bearing date the 20th day of March, 1916, and recorded in Book 47 at page 316, Records of Deeds of Washoe County, Nevada, and executed by W. F. P. Lyell. Together with the tenements, hereditaments and appurtenances thereunto belonging or appertaining, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof, subject, however, to the following reservations, reversions and remainders; that if the said C. D. Ridenour has not conveyed or transferred the said

described lands at any time prior to his death, then in that event an undivided one-half (½) interest in said premises is to revert to and reinvest in fee in the grantor or heirs of the grantor herein now living or to their heirs, executors or legal representatives, and they shall be the owners of said undivided one-half interest in said premises.

"To have and to hold the said premises, together with the appurtenances, unto the said party of the second part, and to his heirs and assigns forever subject to the reservations and remainders as above mentioned."

At the time of the execution of the deed the grantor made his last will, which contains, among others, the following clauses:

"Second. I further declare that I have by deed transferred to my son, S. D. Ridenour, of Susanville, California, all of the real property which I own in Lassen County, California, formerly known as the D. C. Wheeler ranch, together with all live stock, farming utensils and implements and other personal property which I own in connection with said ranch, which said deed has been or will be placed in escrow in the Scheeline Banking & Trust Company, of Reno, Nevada, to be delivered upon my death. I have also by deed conveyed to my son, C. D. Ridenour, of Reno, Nevada, that certain ranch in Washoe County, formerly known as the Lyell Ranch, together with all livestock, farming implements and other personal property belonging to me, kept and used in connection with said ranch, which said deed has been or will be placed in escrow with said Scheeline Banking & Trust Company to be delivered upon my death.

"Third. I devise and bequeath all of my real and personal property, of whatsoever character and wheresoever situated, of which I may die possessed, other than the real and personal property which I have conveyed to my sons, as above mentioned, to my wife, Mary J. Ridenour, during her lifetime, and at her death all of the residue of the personal and real property which may be in her possession to be divided equally among our four children, to wit, our sons C. D. Ridenour,

of Reno, Nevada, and S. D. Ridenour, of Susanville, California, and our daughters, Hattie Allenbach and Echo Gerow, both of Reno, Nevada, to share equally therein."

The complaint proceeds upon the theory that the will did not devise, bequeath or convey to any devisee any part or portion of the property and premises described in the complaint and that as to said property and premises the decedent, David W. Ridenour, died intestate. The answer denies this allegation and asserts that it was the intent of the testator to convey to the defendant, C. D. Ridenour, all the property described in the deed concerning which this action was brought.

I am impressed that the instruments were drawn by a person skilled in legal phraseology, and they must be judged by the legal meaning of the words employed. The deed in form is that of a bargain and sale deed, but it is conceded, or must be conceded, that it was intended as a voluntary grant made by a father to his son, in consideration of love and affection, and executed animo testandi. By reference to the will it will be observed that the testator says: "I have also by deed conveyed to my son, C. D. Ridenour." But it will also be observed that the deed is made to speak from the date of the death of the testator.

In determining whether the instrument is a deed or a will the controlling question is: "Did the maker intend any estate or interest whatever to vest before his death, and before the execution of the paper? Or * * * did he intend that all the interest and estate should take effect only after his death, If the former, it is a deed; if the latter, a will; and it is immaterial whether he calls it a will or a deed, the instrument will have operation according to its legal effect." Henderson v. Henderson, 210 Ala. 73, 97 So. 353; Niccolls v. Niccolls, 168 Cal. 444, 143 P. 712; Knight v. Knight, 133 Miss. 74, 97 So. 481; In Re Neil's Estate, 111 Or. 282, 226 P. 439; Mumpower v. Castle, 128 Va. 1, 104 S. E. 706; Young v. O'Donnell,

129 Wash. 219, 224 P. 682; 40 Cyc. 1085 (b), note 47; Devlin on Deeds, sec. 309.

Tested by the rule enunciated by the authorities cited, I am of the opinion that the legal effect of the instrument is a will and not a deed: First, because it is to take effect only from the date of the death of the maker. Second, it appears from the extrinsic evidence that the maker exercised complete dominion and control over the property up to the time of his death, and in fact at one time leased it to a stranger for a term of years at a stated rental, with option to purchase. Third, it attempts to convey in fee to the son upon condition that, if the property was not sold in the grantee's lifetime, then and in that event an undivided one-half of the property is to revert to the grantor or his heirs now living or other heirs. Whether such a reversion is repugnant to the grant, and void, I express no opinion. Fourth, the instruments were executed together with testamentary intent. Fifth, the doctrine of the cases is that, whatever the form of the instrument, if it possess no present interest, but only points what is to be done after the death of the maker, it is a testamentary instrument. Devlin on Deeds, sec. 309.

Entertaining the view that the deed is a testamentary instrument, I conclude that its delivery to C. D. Ridenour and its acceptance by him was not induced by a common or mutual mistake of the parties in interest as to the legal effect of the instrument. Feeling as I do that by its delivery the will and manifest intent of the testator was carried out, I dissent from the opinion of the majority.

ON PETITION FOR REHEARING

September 27, 1929.

*Per Curiam:*

Rehearing denied.

SANDERS, J.: I dissent.