132 Nev., Advance Opinion 64

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| BANK OF NEVADA, A NEVADA BANKING CORPORATION, Appellant, vs. MURRAY PETERSEN, AN INDIVIDUAL, Respondent. | No. 66568 |

**FILED**

AUG 12 2016

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

Appeal from district court orders granting and denying cross-motions for summary judgment and denying a post-judgment motion to alter or amend in an action for a deficiency on a commercial guaranty. Eighth Judicial District Court, Clark County; Kenneth C. Cory, Judge.

*Reversed and remanded.*

Snell & Wilmer, L.L.P., and Michael D. Stein and Bradley T. Austin, Las Vegas,
for Appellant.

The McKnight Law Firm, PLLC, and Richard McKnight, Las Vegas,
for Respondent.

BEFORE HARDESTY, SAITTA and PICKERING, JJ.

*OPINION*

By the Court, PICKERING, J.:

This appeal requires us to interpret NRS 40.455 and NRS 40.4639 and to decide whether, in the context of a suit by an undersecured creditor on a commercial guaranty, a pre-foreclosure complaint for the deficiency allowed by NRS 40.495(4) satisfies the requirements of NRS

16-25011

Chapter 40. We hold that it does and therefore reverse the district court's summary judgment in favor of the guarantor.

## I.

Respondent Murray Petersen defaulted on a commercial guaranty agreement with appellant Bank of Nevada (BON) by failing to repay the more than $2,500,000 loan BON made to Petersen's company, Red Card, LLC. The loan was evidenced by two promissory notes, Note A and Note B, which were secured by first and second deeds of trust on the real property located at 8490 Westcliff Dr., Las Vegas, Nevada, on which Red Card operated its gas station and convenience store business (the Property). Petersen personally guaranteed both Note A and Note B. Further, Petersen agreed to waive any rights or defenses he may have under NRS 40.430, Nevada's one-action rule.

When Red Card defaulted on the Notes, and Petersen did not make good on his guaranty, BON sued Petersen. BON filed its action against Petersen on April 12, 2013, after sending a notice of default and election to sell but before foreclosing the deeds of trust on the Property. In its complaint, BON did not seek from Petersen the full amount due on the Notes. Instead, paraphrasing the guarantor deficiency provision in NRS 40.495(4), BON's complaint sought damages from Petersen in:

> (a) The amount by which the Indebtedness exceeds the fair market value of the property as of the date of commencement of this action; or
>
> (b) If a foreclosure sale is concluded before a judgment is entered, the amount that is the difference between the amount for which the property was actually sold and the Indebtedness;
>
> whichever is the lesser amount.

SUPREME COURT
OF
NEVADA

(O) 1947A

BON proceeded to foreclosure sale on the first and second deeds of trust on June 18, 2013, roughly two months after it sued Petersen. BON acquired the Property at foreclosure by means of a $1,400,000 credit bid. Six weeks later, BON and Petersen filed the joint case conference report required by NRCP 16.1. The joint case report identified "[t]he key issue in this case [as] the fair market value of the [P]roperty." After several months of discovery, BON and Petersen resolved the issue, submitting a stipulation and order, which the district court signed and filed on December 13, 2013, declaring that, "The fair market value of the [P]roperty at issue in this action . . . , as of the date of the commencement of this action, is $1,990,000."

On January 16, 2014, BON moved for summary judgment. It supported its motion with evidence establishing that, as of the date of commencement of the action, the amounts owed on Notes A and B were $1,843,726.54 and $1,256,071.75, respectively. The stipulated fair market value of the Property as of that date ($1,990,000) was enough to satisfy the entire indebtedness on Note A ($1,843,726.54), and a portion ($1,990,000 − $1,843,726.54 = $146,273.46) of the indebtedness on Note B ($1,256,071.75), yielding a deficiency due on Note B, after foreclosure of the first and second deeds of trust, of $1,109,798.29 ($1,256,071.75 − $146,273.46 = $1,109,798.29). Applying this math, BON's motion for summary judgment sought a deficiency judgment against Petersen in the principal amount of $1,109,798.29, plus prejudgment interest, attorney fees, and costs.

Petersen opposed BON's motion for summary judgment with a cross-motion for summary judgment of his own. Petersen argued that, because BON let more than six months elapse between the date of the

foreclosure sale (June 18, 2013) and the date it filed its motion for summary judgment (January 16, 2014), BON forfeited its right to obtain a deficiency judgment by operation of NRS 40.455, which requires a foreclosing lender to make "application" for a deficiency judgment "within 6 months after the date of the foreclosure sale." In response, BON argued that its pre-foreclosure complaint satisfied all applicable requirements in NRS Chapter 40, to wit: NRS 40.495(4), which allows a commercial lender whose guarantor has waived NRS 40.430's one-action rule, to bring an action for a deficiency before conducting a foreclosure sale; and NRS 40.4639, which applies to junior lienholders and requires that "a civil action," not a separate "application," be filed "within 6 months after the date of the foreclosure sale." The district court agreed with Petersen and granted summary judgment in his favor and against BON.

## II.

### A.

We review the district court's NRCP 56 summary judgment de novo. *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005). There are no contested facts, only questions of statutory interpretation, which also receive de novo review. *Walters v. Eighth Judicial Dist. Court*, 127 Nev. 723, 727, 263 P.3d 231, 234 (2011).

### B.

Petersen defends the correctness of the summary judgment in his favor based on NRS 40.455(1), as interpreted in *Lavi v. Eighth Judicial District Court*, 130 Nev., Adv. Op. 38, 325 P.3d 1265 (2014). Like this case, *Lavi* grew out of a defaulted commercial real estate loan. The loan was secured by a first deed of trust on the real estate. After the borrower defaulted, the beneficiary of the deed of trust, Branch Banking and Trust (BB&T), "filed a complaint seeking full recovery of the loan's

SUPREME COURT
OF
NEVADA

(O) 1947A

balance from Lavi," who had guaranteed the loan and, in his guaranty, waived the protections of NRS 40.430. *Id.* at 1266; *see* NRS 40.495(2) (providing that a guarantor "may waive the provisions of NRS 40.430"). BB&T then foreclosed its deed of trust, which produced a deficiency. Almost a year after the foreclosure sale, BB&T moved for summary judgment against Lavi, who filed a countermotion to dismiss. *Lavi*, 130 Nev., Adv. Op. 38, 325 P.3d at 1266. In his countermotion, Lavi argued that BB&T's complaint should be dismissed under NRS 40.455(1) which, by its terms, required BB&T to make "application" for the deficiency "within 6 months after the date of the foreclosure sale," a deadline BB&T missed when it waited a year after the sale to file its motion for summary judgment.

The court sided with Lavi. Applying the pre-2011 version of NRS 40.495,[1] we held that:

> When Lavi waived the one-rule action, BB&T was allowed to bring an action against him prior to completing the foreclosure on the secured property, but that waiver did not terminate the procedural requirements for asserting that separate action. Although BB&T commenced an action on the guaranty first under NRS 40.495(2), once it foreclosed on the property and sought a deficiency judgment, it was required to satisfy NRS 40.455 [and make] timely application for a deficiency judgment . . . .

[1]NRS Chapter 40 was substantially amended in 2011 and again in 2015. 2011 Nev. Stat., ch. 311, §§ 1-5.5, at 1742-45; *see* 2015 Nev. Stat., ch. 518, §§ 1-13, at 3336-45. Although the *Lavi* opinion was filed in 2014, the case arose under the pre-2011 version of NRS Chapter 40 because BB&T filed the underlying complaint against Lavi in 2009. *See Lavi*, 130 Nev., Adv. Op. 38, 325 P.3d at 1269, 1271, 1274 (Pickering & Hardesty, JJ., dissenting).

*Lavi*, 130 Nev., Adv. Op. 38, 325 P.3d at 1268. BB&T's complaint against Lavi did not constitute the "application" required by NRS 40.455(1) because it sought the full loan amount as opposed to a deficiency, *see id.* at 1266, and, under NRS 40.495 as written before its amendment in 2011, BB&T's "right to a deficiency judgment [did] not vest until the secured property [was] sold." *Id.* at 1269. Also, while a motion for summary judgment can satisfy NRS 40.455(1)'s "application" requirement, *see Walters*, 127 Nev. at 728, 263 P.3d at 234, BB&T filed its motion for summary judgment almost a year after the foreclosure sale. The *Lavi* majority thus concluded that "BB&T was barred from recovering under the guaranty because it failed to apply for a deficiency judgment under NRS 40.455 within six months after the property's sale." *Lavi*, 130 Nev., Adv. Op. 38, 325 P.3d at 1266.

## C.

*Lavi* was decided under the pre-2011 version of NRS Chapter 40. *See supra* note 1. The 2011 Nevada Legislature made two significant amendments to Chapter 40. First, it amended NRS 40.495, governing pre-foreclosure suits by lenders against guarantors who have waived NRS 40.430's one-action rule, to add subparagraph 4, which specifies the lender's pre-foreclosure right to a deficiency judgment against its guarantor and how to calculate that judgment. 2011 Nev. Stat., ch. 311, § 5.5, at 1743-44; *see* NRS 40.495(4). Second, the 2011 Legislature created a statutory scheme to govern junior lienholder claims. 2011 Nev. Stat., ch. 311, §§ 1.2-3.3, at 1742-43; *see* NRS 40.4636 to 40.4639. In doing so, it added NRS 40.4639, which substitutes the filing of a "civil action" for NRS 40.455(1)'s "application" requirement in the junior lienholder context. BON maintains that, together, these amendments take this case outside *Lavi* and its reading of NRS 40.455(1). We agree.

1.

Some background is helpful to place the 2011 amendments to NRS Chapter 40 in context. NRS 40.430 states Nevada's one-action rule. It provides that, in general, "there may be but one action for the recovery of any debt, or for the enforcement of any right secured by a mortgage or other lien upon real estate," and specifies that such "action must be in accordance with the provisions of NRS 40.426 to 40.459, inclusive." NRS 40.430(1). Included in the range of provisions with which the "action" must comply are NRS 40.451 through NRS 40.459. These provisions establish the procedures a lender must follow to obtain a deficiency judgment, NRS 40.455, 40.457, and cap the deficiency by the amount remaining after subtracting the fair market value of the foreclosed real estate, NRS 40.459, thereby protecting the debtor against an unfairly low credit bid. By requiring the lender to proceed first against the property, and limiting the deficiency arising from foreclosure by the fair market value of the property foreclosed, the one-action rule and its associated fair value protections "prevent harassment of debtors by creditors attempting double recovery by seeking a full money judgment against the debtor and by seeking to recover the real property securing the debt." *McDonald v. D.P. Alexander & Las Vegas Boulevard, LLC*, 121 Nev. 812, 816, 123 P.3d 748, 751 (2005).

NRS 40.495 allows a commercial guarantor to waive the protections of NRS 40.430 so long as the secured debt guaranteed exceeds $500,000. NRS 40.495(2), (5)(a); *see* NRS 40.430(1) ("Except in cases where a person proceeds under subsection 2 of NRS 40.495 . . . there may be but one action for the recovery of any debt . . . ."); NRS 40.453 (providing that "[e]xcept as otherwise provided in NRS 40.495," it is "against public policy for any document relating to the sale of real

property to contain any provision" waiving the protections afforded by state statute). Beyond permitting such waivers, NRS 40.495 as written before its amendment in 2011 contained few specifics. Subparagraph 2 provided, as it does today, that an action against a guarantor who has waived the protections of NRS 40.430 "may be maintained separately and independently" from any proceedings against the grantor of the deed of trust or his property. And NRS 40.495(3) provided, much as it does today, "If the obligee maintains an action to foreclose or otherwise enforce a mortgage or lien and the indebtedness or obligations secured thereby, the guarantor, surety or other obligor may assert any legal or equitable defenses provided pursuant to the provisions of NRS 40.451 to 40.463 [today, 40.4639], inclusive." *See* 2011 Nev. Stat., ch. 311, § 5.5, at 1744. But, until it was amended in 2011, NRS 40.495 did not include its own fair value provisions to apply when, after bringing suit against its guarantor, the lender foreclosed on the property securing the guaranteed debt. This raised the specter of an unfair double recovery that drove the decision in *Lavi*, where the obligee sought full recovery from the guarantor in its complaint, yet foreclosed on the property after suing the guarantor. 130 Nev., Adv. Op. 38, 325 P.3d at 1268 (stating concern that obligees should not receive excess recovery and that guarantors have notice of the actual amount of the deficiency); *but see* NRS 40.475 (addressing the paying guarantor's subrogation rights).

In 2011, the Legislature added subparagraph 4 to NRS 40.495. In NRS 40.495(4), the Legislature provided, for the first time, a method by which a lender intending both to foreclose a secured debt and sue the guarantor for the deficiency could calculate and claim the deficiency from

SUPREME COURT
OF
NEVADA

(O) 1947A

8

the guarantor, though it had yet to conduct the foreclosure sale. As amended in 2011, NRS 40.495(4) reads:

> If, before a foreclosure sale of real property, the obligee commences an action against a guarantor, surety or other obligor, other than the mortgagor or grantor of a deed of trust, to enforce an obligation to pay, satisfy or purchase all or part of an indebtedness or obligation secured by a mortgage or lien upon the real property:
>
> (a) The court must hold a hearing and take evidence presented by either party concerning the fair market value of the property as of the date of the commencement of the action. Notice of such hearing must be served upon all defendants who have appeared in the action and against whom a judgment is sought, or upon their attorneys of record, at least 15 days before the date set for the hearing.
>
> (b) After the hearing, if the court awards a money judgment against the [guarantor, surety or other obligor[2]] who is personally liable for the debt, the court must not render judgment for more than:
>
> (1) The amount by which the amount of the indebtedness exceeds the fair market value of the property as of the date of the commencement of the action; or
>
> (2) If a foreclosure sale is concluded before a judgment is entered, the amount that is the difference between the amount for which the property was actually sold and the amount of the indebtedness which was secured,
>
> whichever is the lesser amount.

---

[2]The 2013 Legislature corrected a technical error in the 2011 version of NRS 40.495(4)(b), substituting "guarantor, surety or other obligor" for "debtor, guarantor or surety." *See* 2013 Nev. Stat., ch. 553, § 10, at 3797, 3810-11.

NRS 40.495(4) incorporates, with changes specific to the waived one-action rule/commercial guaranty setting, much of the language and many of the fair value protections in NRS 40.451 through NRS 40.459. The deficiency hearing provision in NRS 40.495(4)(a), for example, replicates NRS 40.457(1), except that it limits the deficiency by the fair market value of the property as of the date of the commencement of the action, as opposed to the date of the foreclosure sale.[3] Similarly, NRS 40.495(4)(b)'s alternative fair value/sale price deficiency metric copies that in NRS 40.459(2), again except for the date fair market value is measured, using the date of commencement of the action instead of the date of the foreclosure sale.

In this case, BON sued Petersen in 2013. Unlike the lender in *Lavi*, who in 2009 "filed a complaint seeking full recovery of the loan's balance from Lavi," 130 Nev., Adv. Op. 38, 325 P.3d at 1266, BON never sought more from Petersen than the deficiency allowed by NRS 40.495(4). BON built its complaint on NRS 40.495(4). Both in the body of its complaint and in the complaint's *ad damnum* clause, BON limited its claim to the difference between the indebtedness and either the fair market value as of the date of the commencement of the action or the foreclosure sale price, whichever proved less. Petersen thus had fair

_____

[3]NRS 40.457(1) provides that before awarding a deficiency judgment under NRS 40.455, the court shall "hold a hearing and shall take evidence presented by either party concerning the fair market value of the property *as of the date of foreclosure sale*. Notice of such hearing shall be served upon all defendants who have appeared in the action and against whom a deficiency judgment is sought, or upon their attorneys of record, at least 15 days before the date set for the hearing." (Emphasis added.) NRS 40.495(4)(a) substitutes "as of the date of commencement of the action" for "as of the date of foreclosure sale."

SUPREME COURT
OF
NEVADA

(O) 1947A

10

notice, from the start, that BON sought a deficiency judgment and, given NRS 40.495(4)(b), knew how to calculate what he owed. Thus, Petersen joined issue with BON on its deficiency claim in his answer and, thereafter, in the joint case conference report and stipulation and order respecting the fair market value of the Property, both of which—the case conference report and the stipulation and order—were filed within six months of the foreclosure sale.

Under these circumstances, BON's complaint for a deficiency, as augmented by the joint case conference report and stipulation and order, satisfied the "application" requirement in NRS 40.455(1). While a motion for summary judgment can constitute a sufficient "application" for purposes of NRS 40.455(1), so, too, can a properly pleaded complaint for a deficiency. *See First Interstate Bank of Nev. v. Shields*, 102 Nev. 616, 618 n.2, 730 P.2d 429, 430 n.2 (1986) (equating complaint with application in analyzing timeliness of application for a deficiency under an earlier version of NRS 40.455); *see also Walters*, 127 Nev. at 727-28, 263 P.3d at 234 (holding that the obligee's motion for summary judgment qualified as a timely "application" for a deficiency, but not addressing whether the obligee's counterclaim and cross-claim also qualified, and noting that NRS 40.455(1) does not require that the application "be specifically labeled as a deficiency judgment application"); *Application, Black's Law Dictionary* (10th ed. 2014) (defining "application" to mean either "[a] request or petition" or a "[m]otion").

To be sure, BON filed its complaint before, not after, the foreclosure sale, and *Lavi* contains broad language suggesting that, because NRS 40.455(1) requires the "application" to be filed "within 6 months *after* the date of the foreclosure sale," a pre-foreclosure complaint

against a guarantor will never do. *Lavi*, 130 Nev., Adv. Op. 38, 325 P.3d at 1269 (emphasis added) (quotation omitted) (stating that "BB&T's complaint could not have met NRS 40.455's requirements because BB&T filed it before the trustee's sale"). But this broad pronouncement was not necessary to the holding in *Lavi*, given that the guarantor's complaint in *Lavi* sought the full amount of the debt, not just the deficiency, even after the foreclosure sale, directly offending the public policy *Lavi* sought to defend. *Accord Badger v. Eighth Judicial Dist. Court*, 132 Nev., Adv. Op 39, 373 P.3d 89, 94 (2016) (citing *Lavi* and holding that, where the lender did not sue the guarantor for a deficiency in its original complaint or amend its timely post-foreclosure complaint against the borrower to add the guarantor until more than 6 months after the foreclosure sale, NRS 40.455(1) barred a deficiency action against the guarantor). The 2011 amendments to NRS 40.495(4) changed the rules of the game and gave BON, on Petersen's default, the right to pursue a deficiency, measured as of the date of the commencement of the action, which right it timely and properly exercised.[4] *Lavi* thus does not control.

---

[4]Our reading of NRS 40.455(1) is confirmed by the 2015 Legislature's amendment of NRS 40.455, 2015 Nev. Stat., ch. 518, § 8, at 3340, which left subparagraph 1's application requirement intact but added new subparagraph 4 to clarify: "For purposes of an action against a guarantor . . . pursuant to NRS 40.495, the term 'application' includes, without limitation, a complaint or other pleading to collect the indebtedness or obligation which is filed before the date and time of the foreclosure sale unless a judgment has been entered in such action as provided in paragraph (b) of subsection 4 of NRS 40.495." NRS 40.455(4). While the 2015 amendments do not carry retroactive effect, *see Badger*, 132 Nev., Adv. Op 39, 373 P.3d at 94 n.1 (alternative holding), they nonetheless may be consulted to the extent they clarify unclear statutory

*continued on next page...*

2.

Even accepting Petersen's argument that, under *Lavi*, BON's pre-foreclosure complaint could not satisfy NRS 40.455(1), we still must reverse the summary judgment in favor of Petersen. In addition to amending NRS 40.495 to add subparagraph 4, the 2011 Legislature also added a new series of statutes specifically to govern junior lienholder claims. 2011 Nev. Stat., ch. 311, §§ 1.2-3.3, at 1742-43; *see* NRS 40.4636 to 40.4639. The Legislature included, as part of its junior lienholder scheme, NRS 40.4639, which provides:

> A civil action not barred by NRS 40.430 or 40.4638 by a person to whom an obligation secured by a junior mortgage or lien on real property is owed to obtain a money judgment against the debtor after a foreclosure sale of the real property or a sale in lieu of a foreclosure sale may only be commenced within 6 months after the date of the foreclosure sale or sale in lieu of a foreclosure.

BON argues that, because it was undersecured only on the second deed of trust, it necessarily filed its action for the deficiency authorized by NRS 40.495(4) in its capacity as a junior lienholder and that, having filed the civil action required by NRS 40.4639, it was not required to do more. *See State Tax Comm'n v. Am. Home Shield of Nev., Inc.*, 127 Nev. 382, 388, 254 P.3d 601, 605 (2011) ("A specific statute controls over a general statute.").

NRS 40.4639 speaks to an action by a junior lienholder "against the debtor." In extending the fair value and anti-deficiency

---

*...continued*
text. *See Pub. Emps.' Benefits Program v. Las Vegas Metro. Police Dep't*, 124 Nev. 138, 157 n.52, 179 P.3d 542, 555 n.52 (2008).

Supreme Court
OF
Nevada

(O) 1947A

protections of NRS Chapter 40 to guarantors, NRS 40.495(3) specifically references NRS 40.4639, providing that, in a proper case, a guarantor "may assert any legal or equitable defenses provided pursuant to the provisions of NRS 40.451 to 40.4639, inclusive." Petersen objects that, as the holder of both the first and second deed of trusts, who purchased the property by credit bid at the foreclosure sale, BON is not a sold-out junior lienholder, defeating application of NRS 40.4639. While Petersen is correct that BON is not a sold-out junior lienholder, *see* NRS 40.430(6)(j), the junior lienholder statutes, including NRS 40.4639, apply to junior lienholders generally and are not restricted to those who are sold out. And, since Petersen waived the one-action rule, BON's "civil action," though not an action by a sold-out junior lienholder under NRS 40.430(6)(j), was not "barred by NRS 40.430." NRS 40.4639. We therefore reject Petersen's threshold argument that NRS 40.4639 does not apply.

Unlike NRS 40.455, which requires the obligee to file an "application" for a deficiency judgment, NRS 40.4639 requires the junior lienholder to commence a "civil action." While the Legislature has not expressed how a lienholder commences a civil action in the context of NRS 40.4639, the Nevada Rules of Civil Procedure state: "A civil action is commenced by filing a complaint with the court." NRCP 3.

NRS 40.4639 copies NRS 40.455(1) to the extent the "civil action" it requires must be "commenced within 6 months *after* the date of the foreclosure sale." (Emphasis added.) While *Lavi* read "*after* the date of the foreclosure sale" literally in the context of NRS 40.455(1), we decline to extend this literal reading of the word "after" to NRS 40.4639 for three reasons. First, a junior lienholder who properly commences the pre-foreclosure deficiency action authorized by NRS 40.495(4) against its

SUPREME COURT
OF
NEVADA

(O) 1947A

14

guarantor should not have to commence a second, post-sale action to satisfy the civil action requirement of NRS 40.4639. *See Allenbach v. Ridenour*, 51 Nev. 437, 462, 279 P. 32, 37 (1929) ("The law does not require idle acts" not necessary to do justice). Second, NRS 40.4639 acts as a statute of limitations, not a limit on when a cause of action for a deficiency accrues under NRS 40.495(4). *See* NRS 11.190 (establishing the statutes of limitations generally applicable to various kinds of Nevada actions "[e]xcept as otherwise provided in NRS 40.4639"). Third, when the Legislature amended NRS 40.455 in 2015, it recognized that lenders can bring pre-foreclosure deficiency actions under NRS 40.495(4) against defaulting guarantors who have waived the one-action rule, and now allows a pre-foreclosure complaint to satisfy the "application" requirement of NRS 40.455 in an action against a guarantor. *See* NRS 40.455(4), reprinted *supra* note 3; Hearing on S.B. 453 Before the Assembly Judiciary Comm., 78th Leg. (Nev., May 1, 2015). Even with this exception to NRS 40.455, the 2015 Legislature did not amend NRS 40.455(1) to remove the language "within 6 months *after* the date of the foreclosure sale." (Emphasis added.) The Legislature has the last word on how it writes its statutes and, if a lender who brings a pre-foreclosure deficiency action against its guarantor does not have to make a second, separate application after the foreclosure sale occurs, it would produce unreasonable results to require a junior lienholder to file a second civil action or amend its complaint to satisfy NRS 40.4639. *See City of Reno v. Bldg. & Constr. Trades Council of N. Nev.*, 127 Nev. 114, 121, 251 P.3d 718, 722 (2011) ("No part of a statute should be rendered meaningless, and

SUPREME COURT
OF
NEVADA

(O) 1947A

this court will not read statutory language in a manner that produces absurd or unreasonable results." (internal quotation marks omitted)).

## III.

As the statutory landscape for deficiency actions against guarantors has changed since this court decided *Lavi*, 130 Nev., Adv. Op. 38, 325 P.3d 1265, we hold that BON's complaint against Petersen for the deficiency allowed by NRS 40.495(4) satisfied the requirements of NRS Chapter 40. We therefore reverse the district court's orders and remand for calculation and entry of summary judgment in favor of BON.

_____, J.
Pickering

We concur:

_____, J.
Hardesty

_____, J.
Saitta

SUPREME COURT
OF
NEVADA

(O) 1947A